**ALLEY, Appellant,**

v.

**BETTENCOURT et al., Appellees.**

[Cite as *Alley v. Bettencourt* (1999), 134 Ohio App.3d 303.]

Court of Appeals of Ohio,
Fourth District, Pike County.

No. 98CA626.

Decided Sept. 10, 1999.

304

---

*Charles H. Wilson, Jr.,* for appellant.

*Randall L. Lambert,* for appellees.

KLINE, Presiding Judge.

Donald Alley, appellant, filed an action in the Pike County Court of Common Pleas, alleging that Officer George Bettencourt, Officer Greg Ford, and Officer Gary Siders ("the officers"), appellees, violated his federal civil rights, pursuant to Section 1983, Title 42, U.S.Code, and committed tortious acts under state law. The officers filed for summary judgment, asserting that the doctrines of qualified and sovereign immunity barred Alley's claims. The court entered summary judgment for the officers.

On appeal, Alley asserts that the trial court erred in granting the officers summary judgment on his federal claims because he presented evidence creating a genuine issue of material fact as to whether the officers violated his constitutional rights by (1) illegally entering his house and (2) using excessive force to arrest him. Alley also asserts that sovereign immunity does not bar his claims under state law. We disagree in part, because Alley failed to produce evidence to show that the officers illegally entered his home to arrest him. We agree in part, because Alley produced evidence that the officers used excessive force to arrest him and acted outside the scope of their employment in doing so.

Accordingly, we affirm in part and reverse in part the judgment of the trial court, and remand this cause to the trial court for further proceedings consistent with this opinion.

I

In September 1997, Alley filed suit against the officers, alleging that they deprived him of his rights, privileges, and immunities under the United States Constitution, in violation of Section 1983, Title 42, U.S.Code. Alley also alleged that the officers unlawfully entered his home, assaulted him, and caused him severe emotional distress.

The officers filed for summary judgment, arguing that the doctrine of qualified immunity barred Alley's federal claims, because Alley could not prove that they violated any clearly established statutory or constitutional right. The officers also asserted that sovereign immunity barred Alley's state claims, pursuant to R.C. 2744.02 and 2744.03. In support of their motion for summary judgment, the officers attached their own affidavits and a portion of the deposition of Carol Brown, Alley's girlfriend and victim.

According to the facts contained in the officers' motion and supporting evidence, on October 8, 1996, at approximately 12:37 a.m., Brown complained to Officer Bettencourt that Alley had assaulted her while drunk, then passed out in the bedroom of their home. The officers averred that Brown showed signs of

physical abuse, and that she told them that she left the back door to their house unlocked so that they could arrest Alley. Brown also told the officers that Alley would fight anyone who attempted to arrest him and that he kept several firearms in the house.

Upon entering the house through the back door, the officers found Alley asleep in his bedroom. The officers averred that Officer Bettencourt woke Alley and informed him that they were arresting him for domestic violence. When Officer Bettencourt attempted to handcuff Alley, he resisted arrest and tried to hit Officer Bettencourt. Officer Bettencourt averred that he tried to subdue Alley by grabbing his shirt and hitting him in the shoulder with a flashlight. However, due to Alley's loose clothing and struggle, Officer Bettencourt slipped and hit Alley in the head with the flashlight. The officers put Alley in the back of the cruiser to transport him to Pike Community Hospital for treatment for his head wound.

Officer Bettencourt and Ford averred that on the way to the hospital, Alley repeatedly kicked the windows of the patrol car. To subdue Alley, they stopped the cruiser and sprayed Alley with mace. Alley calmed, but, after reaching the hospital, once again became combative. Officer Bettencourt averred that Alley tried to trip him and Officer Ford as they escorted Alley into the hospital, and that Alley slipped and fell. The officers averred that throughout their dealings with Alley, they used only the force necessary to subdue him.

Alley responded to the officers' motion for summary judgment, arguing that qualified immunity did not bar his federal claims, because the officers violated his clearly established constitutional rights under the Fourth Amendment to the United States Constitution. Alley argued that he established a genuine issue of material fact as to whether the officers violated his right to be free from unreasonable searches and seizures by entering his home at night without a warrant, beating him in the head with a flashlight, macing him in the patrol car, and tripping him on the way into the hospital. Alley also argued that the officers were not immune from liability under his state law claims because the officers' conduct was not objectively reasonable.

In support of his response, Alley attached a portion of his testimony from his criminal trial that arose from these facts. Alley testified that on the night in question, he was startled to consciousness by a blow to his head that left blood stains on his bed. Although he admitted to cursing at the officers, Alley denied that he attempted to strike them or to resist arrest. Alley testified that after they placed him in the cruiser, he requested a cigarette, to which the officers responded by macing him. When they arrived at the hospital, Alley testified that the officers tripped him on the way into the hospital, cracking three of his ribs.

The trial court granted summary judgment in favor of the officers. In its decision and judgment entry, the trial court found no genuine issue of material fact regarding whether the officers deprived Alley of his constitutional rights, privileges or immunities secured by the Constitution of the United States or whether the officers unlawfully entered Alley's residence, assaulted him, used excessive force, or caused serious emotional distress.

Alley appeals the judgment of the trial court, asserting the following assignment of error for our review:

" The trial court erred in sustaining the motion of the defendants for summary judgment."

## II

Summary judgment is appropriate only when it has been established (1) that there is no genuine issue as to any material fact, (2) that the moving party is entitled to judgment as a matter of law, and (3) that reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56(A). *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881, 883–884; *Morehead v. Conley* (1991), 75 Ohio App.3d 409, 411, 599 N.E.2d 786, 787–788. In ruling on a motion for summary judgment, the court must construe the record and all inferences therefrom in the opposing party's favor. *Doe v. First United Methodist Church* (1994), 68 Ohio St.3d 531, 535, 629 N.E.2d 402, 406.

The burden of showing that no genuine issue of material fact exists falls upon the party who moves for summary judgment. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 294, 662 N.E.2d 264, 274–275, citing *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801–802. However, once the movant supports his motion with appropriate evidentiary materials, the nonmoving party "may not rest upon mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E); *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 111, 570 N.E.2d 1095, 1099; *Dresher, supra,* at 294–295, 662 N.E.2d at 274–275.

In reviewing whether an entry of summary judgment is appropriate, an appellate court must independently review the record and the inferences which can be drawn from it to determine if the opposing party can possibly prevail. *Morehead,* 75 Ohio App.3d at 411–412, 599 N.E.2d at 787–788. "Accordingly, we afford no deference to the trial court's decision in answering that legal question." *Id.* See, also, *Schwartz v. Bank One, Portsmouth, N.A.* (1992), 84 Ohio App.3d 806, 809, 619 N.E.2d 10, 11–12.

## A

Alley argues that the trial court erred in granting the officers summary judgment on his federal claims. Specifically, Alley contends that a genuine issue of material fact exists as to whether the officers violated his clearly established constitutional rights under the Fourth Amendment by (1) illegally entering his home without a warrant and (2) using excessive force to arrest him. The officers contend that Alley failed to present evidence to refute the presumption of qualified immunity because the officers (1) legally entered Alley's home and (2) used only the force necessary to arrest Alley.

Section 1983, Title 42, U.S.Code, provides:

"Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other property proceeding for redress."

To establish a claim against an individual public official under Section 1983, Title 42, U.S.Code, a proponent must show that (1) the person performing the act operated under the color of law, and (2) the act deprived the plaintiff of a federally protected constitutional or statutory right. *Gomez v. Toledo* (1980), 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572; *Cooperman v. Univ. Surgical Assoc., Inc.* (1987), 32 Ohio St.3d 191, 513 N.E.2d 288. Public officials, including police officers, who perform discretionary functions are shielded from liability for civil damages in a Section 1983, Title 42, U.S.Code by qualified immunity if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald* (1982), 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396, 410.

Although qualified immunity is an affirmative defense, the ultimate burden is on the plaintiff to show that a defendant is not entitled to qualified immunity. *Wegener v. Covington* (C.A.6, 1991), 933 F.2d 390, 392. A defendant bears the initial burden of coming forward with facts to suggest that he was acting within the scope of his discretionary authority during the incident in question. *Id.* Thereafter, the burden shifts to the plaintiff to establish that the defendant's conduct violated a right so clearly established that any official in the defendant's position would have clearly understood that he was under an affirmative duty to refrain from such conduct. *Id.*

Alley asserts that the officers violated his clearly established rights under the Fourth Amendment because they neither obtained a warrant for his arrest nor knocked and announced their presence prior to entering his home. The officers argue that Brown's consent validated Alley's arrest.

The Fourth and Fourteenth Amendments to the United States Constitution as well as Section 14, Article I of the Ohio Constitution, provide for "[t]he right of the people to be secure * * * against unreasonable searches and seizures." Searches and seizures conducted without a prior finding of probable cause by a judge or magistrate are *per se* unreasonable under the Fourth Amendment, subject to only a few specifically established and well-delineated exceptions. *California v. Acevedo* (1991), 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619; *State v. Tincher* (1988), 47 Ohio App.3d 188, 548 N.E.2d 251.

Generally, officers may not lawfully make a warrantless and nonconsensual entry into a suspect's home to make an arrest. *Payton v. New York* (1980), 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639. An officer may arrest a suspect without a warrant if he has reasonable grounds to believe that the person committed domestic violence. R.C. 2935.03(B). An officer can conclude that he has reasonable grounds to arrest a person for domestic violence if he observes the facts and circumstances of the incident, including trustworthy information given to him by the alleged victim of the crime. R.C. 2935.03(B)(3)(a)(ii).

An officer entering a home to arrest a suspect must knock and announce his presence prior to entering the home. R.C. 2935.12. R.C. 2935.12 provides that when making an arrest, a police officer may break down a door if, after he notifies the parties inside of his intention to make the arrest, he is refused admittance. The application of R.C. 2935.12 is limited to entries by violent, forcible action. See *State v. Campana* (1996), 112 Ohio App.3d 297, 302, 678 N.E.2d 626, 629; *State v. Baker* (1993), 87 Ohio App.3d 186, 193, 621 N.E.2d 1347, 1351–1352; *State v. Davis* (1992), 80 Ohio App.3d 277, 287, 609 N.E.2d 174, 180–181.

Brown informed the officers that she left her home unlocked so that they could arrest Alley for hitting her and that Alley was unconscious in their bedroom. Brown showed signs of physical abuse and informed the officers that Alley was a violent drunk who kept several firearms in their home. The officers confirmed Alley's unconscious state in the bedroom when they arrived at Alley and Brown's residence. Based upon the totality of the circumstances, we find that Brown consented to the officers entering her home and provided them with ample evidence of reasonable grounds that Alley assaulted her. To enter the home, the officers turned the knob on an unlocked door. We find, therefore, that

the officers did not use violent, forcible action to enter the home and complied with the requirements of R.C. 2935.12.

 Thus, we find that the police officers met their initial burden of showing that they were within the scope of their discretionary authority during the incident in question. Furthermore, the officers complied with the constitutional and statutory requirements in arresting Alley. Alley failed to produce evidence that the officers had an affirmative duty to refrain from entering Alley's home and placing him under arrest, let alone that any officer in similar circumstances would have clearly understood that he had such a duty. Therefore, we find that the trial court did not err in granting summary judgment on this claim.

2

Alley also asserts that he presented evidence to create genuine issues of material fact as to whether the officers used excessive force to arrest him, to subdue him in the police car, and carry him from the cruiser into the hospital. The officers contend that they presented evidence that they only used the force necessary to restrain Alley.

 A cause of action exists under Section 1983 when an officer uses excessive force to arrest an individual. *Brown v. Borough of Chambersburg* (C.A. 3, 1990), 903 F.2d 274, 277. Officers are privileged to commit battery when making a lawful arrest, but the privilege is negated by the use of excessive force. *Edwards v. Philadelphia* (C.A.3, 1988), 860 F.2d 568, 572. If, under the totality of the circumstances, an officer unreasonably seizes a person by using excessive force, he violates that person's Fourth Amendment rights. *Frigo v. Guerra* (D.Ill.1994), 860 F.Supp. 524, 531. The reasonableness of force is measured by the facts and circumstances of each particular case, including the severity of the crime, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Graham v. Connor* (1989), 490 U.S. 386, 396, 109 S.Ct. 1865, 1871–1872, 104 L.Ed.2d 443, 455–456.

 Although the officers presented evidence that Alley actively resisted arrest and was the initial aggressor, we find that Alley presented evidentiary materials establishing a genuine issue of material fact as to whether the officers used excessive force to arrest him at his home. Alley testified that Officer Bettencourt woke Alley by hitting him with a flashlight, and thus that Alley was not the initial aggressor.

 The contradiction between Alley's testimony and the averments of the officers creates a genuine issue of material fact as to who initiated the altercation between Alley and Officer Bettencourt. As we must accept Alley's testimony as

true for the purposes of ruling on a motion for summary judgment, we find, as a matter of law, that an objectively reasonable police officer would have clearly understood that he had an affirmative duty to refrain from awakening an unconscious man from sleep with a blow to the head. Therefore, we find that Alley presented sufficient evidence to raise a genuine issue of material fact as to whether Officer Bettencourt used reasonable force to arrest Alley and that the trial court erred by granting summary judgment on this issue.

Alley also asserts that he presented evidence to establish that the officers clearly understood that they violated an affirmative duty to Alley by applying mace to him. The record shows that Alley struggled in the back of the cruiser, used profanity, and kicked the cage between the front and back seats because officers refused his request to smoke. Alley did not deny that he acted aggressively in the back of the cruiser, or present any evidence that the force employed in response to his aggressive actions was unreasonable. Therefore, we find, as a matter of law, that the officers established that they are entitled to qualified immunity with respect to the use of the mace. Therefore, we find that the trial court did not err in granting the officers summary judgment on this issue.

Alley also asserts that he presented evidence that Officer Bettencourt and Officer Ford caused Alley's fall when they carried him from the cruiser into the hospital. Alley testified that the officers tripped him as he entered the hospital, causing him to fall and break three ribs. The officers testified that Alley attempted to trip them and fell. Accepting Alley's testimony as true and construing all reasonable inferences in his favor, we find that Alley presented evidence to create a genuine issue of material fact as to whether objectively reasonable police officers would have clearly understood that they had an affirmative duty to refrain from tripping Alley when they took him from the cruiser to the hospital. Therefore, we find that a genuine issue of material fact exists as to whether the officers are entitled to qualified immunity on this issue. Therefore, we find that the trial court erred by granting the officers summary judgment on this issue.

## B

Alley also asserts that the trial court erred by finding that the doctrine of sovereign immunity bars his claims under state law. Specifically, Alley asserts that he presented sufficient evidence to show that the officers acted manifestly outside the scope of their employment or that their actions were with malicious purpose, in bad faith, or in a wanton or reckless manner. The officers argue that, because they acted within the confines of the law, the trial court properly barred Alley's claims.

Employees of a political subdivision are immune from liability unless the employees' acts or omissions "were manifestly outside the scope of * * * employment or official responsibilities" or "were with malicious purpose, in bad faith, or in a wanton or reckless manner." R.C. 2744.03(A)(6). Thus, an officer cannot be held personally liable for acts committed while carrying out his duties unless one of the exceptions applies. *Cook v. Cincinnati* (1995), 103 Ohio App.3d 80, 90, 658 N.E.2d 814, 820–821.

"Wanton" misconduct refers to a failure to exercise any care whatsoever. *Fabrey v. McDonald Village Police Dept.* (1994), 70 Ohio St.3d 351, 356, 639 N.E.2d 31, 35. "Reckless" refers to conduct that causes an unreasonable risk of harm and is "substantially greater than that which is necessary to make his conduct negligent." *Thompson v. McNeill* (1990), 53 Ohio St.3d 102, 104–105, 559 N.E.2d 705, 708, quoting 2 Restatement of the Law 2d, Torts (1965) 587, Section 500. The term "malice" means the willful and intentional desire to harm another, usually seriously, through conduct which is unlawful or unjustified. *Hicks v. Leffler* (1997), 119 Ohio App.3d 424, 428–429, 695 N.E.2d 777, 779–780. "Bad faith" implies sinister motive that has "no reasonable justification." *Id.* at 429, 695 N.E.2d at 780.

Although we found the officers' entry into the Alley home legally permissible, we also found that Alley presented a question of fact as to whether the officers used excessive force in arresting Alley and in transporting him from the cruiser to the hospital. If Alley's testimony is true, the officers beat him about the head, without provocation, to waken and arrest him. Further, Alley testified that the officers tripped him when they took him from the cruiser to the hospital, breaking three of his ribs. Accepting Alley's allegations as true, as required for summary judgment purposes, the officers exceeded the grounds of reasonable force in two separate instances. Therefore, we find a genuine issue of material fact exists as to whether the officers acted maliciously or recklessly. Therefore, we find that the trial court erred by granting summary judgment to the officers on Alley's state law claims.

Accordingly, we affirm in part, reverse in part, and remand this cause to the trial court for further proceedings consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

HARSHA and EVANS, JJ., concur in judgment and opinion as to the issue of use of excessive force and the state causes of action and concur in judgment only as to the lawfulness of entry into the home.