OPINION
{¶ 1} Plaintiff-appellant Glenda Moffitt appeals from a summary judgment rendered against her on her claims of abuse of process, malicious prosecution, and conversion against defendants-appellees Joan Litteral (now known as Joan Barker), Michael Hochwalt, and West Carrollton police officers regarding a 1986 truck that the parties agree is presently "junk." She argues that the trial court improperly rendered summary judgment because the doctrines of collateral attack, res judicata, lis pendens, and sovereign immunity do not bar recovery on her claims, and genuine issues of fact exist.
{¶ 2} We conclude that the trial court erroneously found that Moffitt was foreclosed from collaterally attacking a previous order of the domestic relations court between Barker and her former husband, Benjamin Litteral, and that her claims were barred under the doctrine of res judicata and lis pendens. Res judicata does not bar recovery because Moffitt was not a party to the final order; thus, she is not barred from waging a collateral attack on that judgment. Lis pendens also does not bar the claim because the truck was not identified in the parties' complaint for divorce. Sovereign immunity, however, does bar Moffitt's claims against West Carrollton police officers in their official capacity, because their actions were governmental functions, within the scope of their employment, not taken with malicious purpose, in bad faith, or in a wanton or reckless manner.
{¶ 3} No genuine issues of fact preclude judgment on Moffitt's abuse of process or malicious prosecution claims. She failed to set forth sufficient evidence under her abuse of process claim, because the legal proceeding was set in motion for the legitimate purpose of setting aside the transfer of title from Litteral to Moffitt. Moffitt's malicious prosecution claim fails because she did not demonstrate that the parties lacked probable cause when filing the lawsuit.
{¶ 4} We do conclude that the trial court erroneously granted summary judgment on Moffitt's conversion claim against Barker, but we conclude that the trial court properly rendered judgment in favor of Hochwalt on that claim. Moffitt supported her claim against Barker by creating a genuine issue of fact regarding ownership of the truck. If Moffitt is the owner, then Barker converted the truck when she took it from Moffitt's property. Her claim against Hochwalt, however, is barred. Attorneys are immune from liability to third parties, who are not in privity with their clients, when they act in a non-malicious manner.
{¶ 5} Accordingly, that part of the judgment of the trial court in favor of Barker on Moffitt's claim of conversion is reversed; the judgment of the trial court is affirmed in all other respects; and this cause is remanded for proceedings consistent with this opinion.
 I
{¶ 6} Joan Litteral ("Barker") filed a complaint for divorce and a petition for domestic violence against Benjamin Litteral on February 3, 1998. As part of a resolution of the domestic violence charge, Litteral agreed not to dispose of any property that he or family and household members owned or possessed, including a 1986 Ford truck. Less than a week later, however, he transferred title of this truck to his niece, Glenda Moffitt. Three months later, a final judgment and decree of divorce was entered. The decree provided that if Litteral did not comply with certain requirements, then the truck would be transferred to, or sold for the benefit of, Barker. In February, 1999, the trial court ordered a judicial transfer of the 1986 Ford truck from Litteral to Barker, who was represented by Hochwalt. The West Carrollton Police Department assisted Barker in obtaining the truck, which was located on Moffitt's property. The next day Moffitt succeeded in regaining possession of the truck. A month later, Moffitt was joined as a party in the divorce action, and Barker obtained a second court order voiding Moffitt's title to the truck, recognizing Barker's title, and charging the West Carrollton police department "to assist this plaintiff [Barker] in arranging to obtain this [truck] which is rightfully hers." Barker subsequently regained possession of the truck, with the assistance of two West Carrollton police officers. Six months later, the orders adding Moffitt as a party, voiding her title to the truck, and recognizing Barker's title, were all vacated.
{¶ 7} Moffitt filed suit against Barker, Hochwalt, the City of West Carrollton, its police department, and individual West Carrollton police officers for abuse of process, conversion, and malicious prosecution. Barker, Hochwalt, and various West Carrollton actors and entities filed motions for summary judgment. The trial court granted judgment to Hochwalt and Barker on the grounds that Moffitt was precluded from collaterally attacking a final judgment that she failed to directly appeal and under the doctrines of res judicata and lis pendens. The court also entered summary judgment in favor of West Carrollton and its officers under the doctrine of sovereign immunity. From that judgment, Moffit appeals.
 II
{¶ 8} Each of Moffit's assignments of error essentially challenge the trial court's award of summary judgment against her. Thus, we will address her claims collectively. These assignments of error are as follows:
{¶ 9} "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY GRANTING SUMMARY JUDGMENT AGAINST PLAINTIFF REGARDING PLAINTIFF'S CLAIM FOR IMPROPER USE AND ABUSE OF PROCESS
{¶ 10} "THE COURT ERRED BY DETERMINING THAT PLAINTIFF'S LAWSUIT WAS A COLLATERAL ATTACK AND THAT PLAINTIFF'S CLAIMS CANNOT BE MAINTAINED IN THE CASE SUB JUDICE
{¶ 11} "THE TRIAL COURT ERRED BY DETERMINING THAT THE DOCTRINE OF RES JUDICATA PRECLUDES PLAINTIFF'S PRESENT COMPLAINT
{¶ 12} "THE TRIAL COURT ERRED BY DETERMINING THAT THE DOCTRINE OF LIS PENDENS WAS APPLICABLE AND THAT PLAINTIFF'S TITLE WAS EXTINGUISHED
{¶ 13} "THE TRIAL COURT ERRED BY DETERMINING THAT THE ACTIONS OF THE POLICE OFFICERS REGARDING THE FIRST TAKING OF PLAINTIFF'S VEHICLE WERE PROPER GOVERNMENT FUNCTIONS OF SAID OFFICERS, THEREBY RENDERING THEM IMMUNE FROM LEGAL ACTION
{¶ 14} "THE TRIAL COURT ERRED BY DISMISSING PLAINTIFF'S CASE WITH PREJUDICE FROM THE DOCKET OF THE COURT REGARDING PLAINTIFF'S CAUSES OF ACTION FOR CONVERSION AND MALICIOUS PROSECUTION"
{¶ 15} We review the appropriateness of summary judgment de novo.Koos v. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588,641 N.E.2d 265. "Pursuant to Civ.R.56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor." Zivich v. Mentor Soccer Club, Inc.82 Ohio St.3d 367, 1998-Ohio-389, 696 N.E.2d 201 (internal citations omitted). Under Civ.R.56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record demonstrating that no genuine issue of material fact exists on the essential elements of the non-moving party's claims. Dresher v. Burt, 75 Ohio St.3d 280, 1996-Ohio-107, 662 N.E.2d 264. Once the moving party meets that burden, the non-moving party has a reciprocal burden of showing that a genuine issue of material fact exists to prevent summary judgment. Id. If the non-moving party fails to meet this burden, then summary judgment is appropriate. With this standard in mind, we address Moffitt's assignments of error.
 A. All of Moffitt's claims have been adjudicated.
{¶ 16} Moffitt contends that the trial court's judgment is erroneous because the court failed to rule upon all of her claims. Alternatively, she appears to claim that if the court did rule upon the claims, its judgment is improper, because the evidence submitted establishes a genuine issue of material fact, precluding judgment as a matter of law.
{¶ 17} In cases involving multiple claims, an order is not final and appealable, and we have no jurisdiction to hear the appeal, unless the requirements of both R.C. 2505.02 and Civ.R.54(B) are met. ChefItaliano Corp. v. Kent State Univ. (1989), 44 Ohio St.3d 86, 541 N.E.2d 64, syllabus. If any of Moffitt's claims remain pending, then we have no jurisdiction to hear this appeal, since the order from which the appeal is taken would not be a final appealable order, and the trial court did not certify, pursuant to Civ.R.54(B), that there is no just cause for delay to appeal. We must first examine the trial court's treatment of Moffitt's claims to determine if we have jurisdiction to hear this appeal.
{¶ 18} The trial court rendered summary judgment in favor of Barker, Hochwalt, and various West Carrollton parties on all claims upon the grounds that Moffitt's claims against Barker and Hochwalt were precluded as a deficient collateral attack, and barred by the defenses of res judicata and lis pendens. Additionally, the court found that Moffitt's claims against West Carrollton et al. were barred by sovereign immunity, pursuant to R.C. 2744.01 et seq. We conclude that all of Moffitt's causes of action have been disposed of, so that we have jurisdiction to consider this appeal.
 B. The claims are not barred by collateral attack and res judicata.
{¶ 19} Moffitt argues that the trial court erred by concluding that her lawsuit was an improper collateral attack and by applying the doctrine of res judicata, or, alternatively, lis pendens, to defeat her claims.
{¶ 20} We begin our analysis by reviewing the propriety of applying the affirmative defenses of collateral attack and res judicata to defeat Moffitt's claims. In our view, the two defenses are flip sides of the same coin. If the doctrine of res judicata applies, then the only proper attack on the judgment would be a direct attack, not a collateral attack. That is the essence of the doctrine of res judicata. If the doctrine does not apply, then Moffitt is not bound by the judgment, and she is free to assert positions antithetical to the judgment.
{¶ 21} Res judicata bars "any subsequent action on the same claim or cause of action between the parties or those in privity with them."Brown v. Dayton, 89 Ohio St.3d 245, 2000-Ohio-148, 730 N.E.2d 958
(emphasis in original). Application of the doctrine to valid, final judgments rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of a previous action. Id. Res judicata is an affirmative defense that the party asserting it bears the burden of establishing.Village Motors v. Yakubisin (Oct. 7, 1983), Stark App. No. CA-6119.
{¶ 22} Barker and Hochwalt moved for summary judgment on Moffitt's claims, alleging that these claims were barred as impermissible collateral attacks, pursuant to the doctrine of res judicata, or alternatively that suit was barred by the doctrine of lis pendens. Additionally, they claimed that if these defenses did not bar Moffitt's suit, then no genuine issue of material fact existed to preclude judgment in their favor. The trial court agreed that the claims were barred as an impermissible collateral attack, not permitted under the doctrine of res judicata, or alternatively because of application of the doctrine of lis pendens.
{¶ 23} Although not entirely clear, it appears that the court reasoned that the domestic relation court's combined orders of February 16, 1999, ordering judicial transfer to Barker of title to the truck, and its orders of March 12, 1999, making Moffitt a third-party defendant, voiding her title, and recognizing Barker's title, constituted a final judgment that Moffitt was obliged to attack directly, barring her present claims by application of the doctrine of res judicata.
{¶ 24} The February 16, 1999 order provides as follows:
{¶ 25} "Upon the Motion and for good cause shown IT IS THEREFORE ORDERED:
{¶ 26} "1. That the 1986 Ford truck * * * shall be transferred to the Plaintiff Joan [Barker] forthwith by way of Judicial Transfer.
{¶ 27} "* * *
{¶ 28} "3. The Court will reserve jurisdiction for the additional issues with regard to the truck including payments, insurance and further attorney award if [Litteral] does not comply * * *."
{¶ 29} This order, however, was later clarified by the Magistrate, who explained:
{¶ 30} "[Barker] asserts in her motion that [Litteral] was ordered to transfer the possession and title to the truck to [Barker]. This is amisconstruction of this magistrate's decision since the transfer was onlya condition for purging the contempt for failure to refinance. An Entry and Order was filed sans hearing on February 16, 1999; it ordered the transfer of the 1986 Ford truck to [Barker]. The parties in this matter were then only [Barker] and [Litteral]. Thus, the transfer could only beeffective between [Litteral] and [Barker]." (Emphasis added).
{¶ 31} The next entry, the March 12, 1999 order, states:
{¶ 32} "Upon the Motion and for good cause shown IT IS THEREFORE ORDERED:
{¶ 33} "That GLENDA MOFFITT, Third Party Defendant, niece of [Litteral], will not interfere further with [Barker's] obtaining possession of the 1986 Ford truck * * * which was ordered to be transferred to the Plaintiff Joan [Barker] forthwith by way of Judicial Transfer February 16, 1999. Any other transfer of that title shall be deemed invalid, other than the transfer ordered by this court February 16, 1999 * * *.
{¶ 34} "IT IS FURTHER ORDERED that the police department of any jurisdiction wherein the truck is located are hereby ordered to assist [Barker] in anyway to obtain this vehicle which is rightfully hers."
{¶ 35} This order, however, was vacated by a December 3, 1999 Entry and Order, which reads as follows:
{¶ 36} "Neither counsel nor parties appeared as counsel for [Barker] indicated that she was withdrawing her motions filed March 12, 1999. As noted in the Magistrate Order * * * [Moffitt] was made a party to this action on March 12, 1999 via n [sic] ex parte order; also, an ex parte order required [Moffitt] not to interfere with [Barker's] possession of a 1986 Ford truck. There has never been a hearing to ascertain[Moffitt's] right and interests in this matter. IT IS THEREFORE ORDERED:
{¶ 37} "1. The motions filed by [Barker] on March 12, 1999 are hereby withdrawn without prejudice.
{¶ 38} "2. The Ex Parte Entry and Order filed March 12, 1999 prohibiting Glenda Moffitt's interference with the 1986 Ford truck is vacated in its entirety.
{¶ 39} "3. The Ex Parte Order filed March 12, 1999 joining Glenda Moffitt as a third-party is vacated in its entirety."
{¶ 40} To determine whether res judicata bars Moffitt's present action, we must first determine whether there was an identity of parties in the two actions. Assuming the February 16, 1999 order is a final order, we conclude that because Moffitt was not a party to that order, the doctrine of res judicata does not apply as a bar to her claims in later litigation. Although Moffitt was subsequently made a third-party defendant in the action, by the March 12, 1999 entry and order, which prohibited her from interfering with Barker's attempts to gain possession of the truck, this order was vacated on December 3, 1999.
{¶ 41} Hochwalt and Barker do not argue that res judicata applies to the March 12, 1999 order, but instead argue that res judicata applies to the February 16, 1999 order. While acknowledging the March 12, 1999 order making Moffitt a party was later vacated, the parties attempt to combine the two orders to bind Moffitt. We conclude that the two orders cannot be tacked together to achieve this purpose. Hochwalt drew up the February 16, 1999, ex parte entry and order, which the domestic relations judge signed. He acknowledges that he was not then aware of Moffitt's interest in the truck (although it appears that his client, Barker, did know of the transfer of title to Moffitt). Thus, as recognized by the Magistrate, the February 16, 1999, order was not intended to apply to Moffitt, and could not have bound her, since she was not a party in the action. The later order, which was intended to bind Moffitt, was subsequently vacated. Accordingly, there is no order in the divorce action directed at Moffitt upon which to base a res judicata bar. Any obligation Moffitt had to attack the order of March 12, 1999, which purportedly applied to her, ceased when that order was vacated. Nothing remained for her to attack directly.
{¶ 42} Hochwalt and Barker argue that although the parties may have been different, Moffitt was in privity with her uncle, so that she was bound by the order directed at Litteral on February 16, 1999. Hochwalt and Barker rely upon Brown, supra, for the privity argument. We note that the February order does nothing more than determine the rights between Barker and Litteral relating to their respective interests in the truck. Even if Moffitt were in privity with Litteral, the February 16, 1999 order does not purport to adjudicate any issue involving the truck beyond the respective rights of Litteral and Barker. This is unlike the situation in Brown, supra, where the issue adjudicated in the prior action was the validity of a Dayton city ordinance.
{¶ 43} Litteral transferred the truck to Moffitt prior to the order of February 16, 1999, and the evidence presented by both parties creates a genuine issue of fact whether the transfer was for value, which is material to the superiority of Moffitt's prior title to the truck. Construing the evidence in a light most favorable to Moffitt, as required under Civ.R.56, Litteral did not hold title to the truck prior to February 16, 1999, and Moffitt's acquisition of title as an alleged bona fide purchaser for value would be superior to any equitable interest that Barker may have had in the truck.
{¶ 44} Furthermore, we conclude that the parties are not in privity under the holding in Brown, supra. In that case, the Ohio Supreme Court found that a mutuality of interest, including an identity of a desired result, created privity between previous opponents of a landfill who sought to prevent a vote on an ordinance and those who later sought to nullify the ordinance, based upon the same fact — that the setback provision was not on file the full thirty days before a commission hearing — since the only difference between the first and second actions was the remedy sought. Brown is distinguishable from the present matter. Unlike the parties in the first and second actions inBrown who sought the same result — invalidation of a city ordinance — Moffitt seeks to establish the superiority of her title to the truck over any interest that Barker might claim in the truck. Litteral transferred title to Moffitt prior to the order of February 16, 1999, and is presumably not claiming an interest in the truck against anyone.
{¶ 45} It has been argued that both Litteral and Moffitt have an interest in the validity of the transfer of title to the truck from Litteral to Moffitt, and that this common interest establishes privity. This argues too much. If that were all that is required to establish privity, then any transferee of title to property would be bound by any subsequent adjudication between the transferor and some third person purporting to award title from the transferor to the third person. The doctrine of lis pendens would be superfluous — it wouldn't matter whether the property were listed in the pleading, because any transferee of the property would be deemed to be in privity with the transferor, anyway. A creditor of an insolvent debtor could get an order transferring title to property that the debtor owned in some happier time, and enforce that order against the current owner, who may have paid dearly for the property. Security agreements would be drafted containing not only after-acquired collateral provisions, but previously-owned collateral.
{¶ 46} We conclude that privity does not extend so far. Although a transferee and a transferor of title to property may have the requisite commonality of interest in the issue of whether, at the time of thetransfer, the transferor has good title to the property, that concept should not be extended to an adjudication purporting to divest a transferor of title (Litteral), in favor of a third person (Barker), after the transferor has already transferred title to a transferee (Moffitt).
{¶ 47} It was incumbent upon Barker and Hochwalt to establish that Moffitt was in privity with Litteral. They have failed to establish that there is no genuine issue of fact material to the privity issue, and that they are entitled to judgment as a matter of law. Upon remand, if Barker succeeds in establishing privity based upon something more than the mere fact that they occupy the relationship of transferor and transferee, she may yet prevail upon this affirmative defense.
{¶ 48} Since Moffitt was not bound by the February 16, 1999 order, she is not attempting to wage a collateral attack on it, and res judicata does not bar her claims. Accordingly, the trial court erred by awarding summary judgment on these bases. However, as we shall see, this error is harmless for all claims except Moffitt's conversion claim against Barker.
 C. The claims are not barred by lis pendens.
{¶ 49} Moffitt argues that the trial court erred by applying the defense of lis pendens to extinguish her claims, because the property was not listed specifically in Barker's complaint for divorce. We agree.
{¶ 50} The common law doctrine of lis pendens is codified at R.C. 2703.26, which provides in pertinent part:
{¶ 51} "When summons has been served or publication made, the action is pending so as to charge third persons with notice of its pendency. While pending, no interest can be acquired by third persons in the subject of the action, as against the plaintiff's title."
{¶ 52} The doctrine applies in divorce actions if the complaint describes the specific property sought to be set apart to the complaining party:
{¶ 53} "The general rule is that one not a party to a suit is not affected by the judgment. The exception is that one who acquires an interest in property which is at that time involved in litigation in a court having jurisdiction of the subject-matter and of the person of whom the interests are acquired, from a party to a proceeding, takes subject to the judgment or decree, and is conclusively bound by the result of the litigation as if he had been a party thereto from the outset. This is so irrespective of whether he has been made a party to the proceeding, or had actual notice of the pendency of the proceeding, and even where there was no possibility of his having had notice of the pendency of the litigation. It is immaterial that a purchaser was a bona fide purchaser and for valuable consideration * * *." Cook v. Mozer (1923),108 Ohio St. 30, 140 N.E. 590.
{¶ 54} To successfully invoke the doctrine of lis pendens, a party must demonstrate three things: (1) the court has jurisdiction both over the person and the property;(2) the property is sufficiently described in the pleadings; and (3) the litigation concerns the specific thing being affected by the lawsuit. Id.
{¶ 55} Moffitt contends that lis pendens does not apply because the vehicle was not sufficiently described in a pleading. Barker and Hochwalt reply that Barker's complaint for divorce placed Moffitt on notice of a potential dispute regarding ownership of the truck. Moreover, they contend that Litteral's affidavit of financial disclosure fulfills the requirement that property be sufficiently described in a pleading. We disagree with both contentions.
{¶ 56} Barker and Hochwalt have directed our attention to no cases, nor have we found any, suggesting that lis pendens applies to bar a claim when the property is not specifically described in a divorce complaint. The only Ohio case we have found considering the effect of lis pendens on property not specifically identified in a complaint for divorce holds that a separation agreement incorporated in a divorce decree that awards a spouse an interest in her husband's business does not constitute a description of property sufficient to invoke the lis pendens doctrine against subsequent creditors of the husband. Perrin v. Coulter (1957), 152 N.E.2d 426. Cf. Huntington Nat'l Bank v. August Wagner Breweries
(June 10, 1976), Franklin App. No. 75AP-690, in which the court, applyingCook, supra, found that a restraining order prohibiting a party from disposing of property did not void or otherwise affect the transfer of that property to a person who had no notice of it.
{¶ 57} Likewise, we conclude that statements in a financial disclosure statement acknowledging Barker's potential interest in the truck do not provide a sufficient description of the property to invoke the doctrine of lis pendens. Again, as we shall see, this only affects the summary judgment rendered in favor of Barker upon the conversion claim, since summary judgment upon all other claims had a proper, independent basis. Moffitt's fourth assignment of error is sustained in part.
 D. Summary judgment was nevertheless properly rendered against Moffitt on her abuse of process and malicious prosecution claims against Barker and Hochwalt.
{¶ 58} Although Barker and Hochwalt predicated their motion for summary judgment upon the affirmative defenses previously discussed, they grounded their motion alternatively upon the general defense that when all of the evidence submitted by the parties is viewed in a light most favorable to Moffitt, there is no genuine issue of material fact, and Barker and Hochwalt are entitled to judgment as a matter of law on the claims of abuse of process, malicious prosecution, and conversion. The trial court did not reach these issues, having erroneously concluded that Barker and Hochwalt had succeeded in establishing the affirmative defenses as a matter of law. Because the general defense to these claims was offered as grounds for summary judgment, and Moffitt had the opportunity to respond, we may affirm the summary judgment if we conclude that Barker and Hochwalt were entitled to summary judgment. As to Hochwalt, we conclude that he was entitled to summary judgment in his favor upon all three claims. As to Barker, we conclude that she was entitled to summary judgment in her favor upon the abuse of process and malicious prosecution claims, but that there are genuine issues of material fact precluding summary judgment on the conversion claim.
{¶ 59} We first analyze Moffitt's abuse of process and malicious prosecution claims. To survive a motion for summary judgment on an abuse of process claim, there must be a genuine issue of material fact on the elements of the tort: "(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process." Yaklevich v. Kemp, Schaeffer Rowe Co., L.P.A.,68 Ohio St.3d 294, 1994-Ohio-503, 626 N.E.2d 115.
{¶ 60} To survive a motion for summary judgment on a malicious prosecution claim, there must be a genuine issue of material fact on the elements of that tort: "`(1) malicious institution of prior proceedings against the plaintiff by defendant, * * * (2) lack of probable cause for the filing of the prior lawsuit, * * * (3) termination of the prior proceedings in plaintiff's favor, * * * and (4) seizure of plaintiff's person or property during the course of the prior proceedings * * *.'"Id. (internal citations omitted).
{¶ 61} Recovery under both of these competing causes of action under the same set of facts is impossible. Yaklevich, supra. If a legal proceeding is set in motion in proper form with probable cause, then a claim for malicious prosecution fails. Alternatively, if the proceeding is instituted or continued with a lack of probable cause, then a claim for abuse of process fails.
{¶ 62} We begin our analysis of these two claims by determining which theory applies. This requires an initial determination whether Barker and Hochwalt's legal actions were supported by probable cause. "`Probable cause is a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing that the accused is guilty.'" Cottman v. Cottman (Md Ct. App. 1983), 468 A.2d 131, quoting from Exxon Corp. v. Kelly (1978),381 A.2d 1146 (citations omitted).
{¶ 63} This definition of probable cause allows for a liberal construction. As applied to attorneys, the term is given an even broader interpretation because "[if] attorneys cannot act and advise freely, parties could not obtain their legal rights. Therefore, [s]uits for malicious prosecution [and abuse of process against attorneys] are viewed with disfavor in law and are to be carefully guarded against." Id.
{¶ 64} In the case before us, both Barker and Hochwalt have presented evidence that would lead them reasonably to conclude that Barker was entitled to set aside the transfer of title from Litteral to Moffitt. Kattwinkel v. Kattwinkel (1947), 80 Ohio App. 397, 74 N.E.2d 418,419 (court reasoned that husband would have been entitled to set aside transfer of automobile from wife to sister if the wife had still had title to the car at the time that restraining order in divorce action, which prohibited her from transferring vehicle, was made). See also,Profeta v. Lombardo (1991), 75 Ohio App.3d 621, 626-27, 600 N.E.2d 360,364 (trial court did not err in voiding title of vehicle in intra-familial transfer scheme to defraud, avoid, or frustrate attempts of party with rightful claim).
{¶ 65} In support of their motion, Barker and Hochwalt submitted affidavits, along with copies of the following relevant documents: (1) Barker's complaint for divorce, petition for domestic violence, and domestic violence ex parte civil protection order filed on December 3, 1998; (2) Litteral's affidavit of financial disclosure filed on February 10, 1998, which lists the truck as an asset; (3) Litteral's consent agreement and domestic violence civil protection order of March 3, 1998, which prohibited him from disposing the truck; and (4) Glenda Moffitt's title to the truck, dated March 12, 1998, which recites that the transfer was for no consideration. This evidence shows that Litteral knew that he was not supposed to transfer the vehicle under a restraining order, agreed not to do so in a consent decree, and then did it anyway.
{¶ 66} Although Moffitt proffered deposition testimony that Barker knew that Moffitt held title to the truck after instituting action against her, that Hochwalt learned of Moffitt's interest in the truck prior to obtaining an ex parte order canceling Moffitt's title, and that Moffitt gave some consideration to Litteral for the vehicle, this does not rebut Barker and Hochwalt's proof that this proceeding was started in proper form with probable cause. Moffitt does not dispute the validity of the various court orders between Barker and Litteral prior to transfer of the truck to her, which precluded Litteral from making the transfer at issue.
{¶ 67} Although Moffitt makes much of the ex parte nature of the orders pertaining to the truck, we are not persuaded that the fact that these orders were obtained as a result of ex parte communications with the domestic relations judge regarding the underlying suit rebuts the existence of probable cause. Even with knowledge of Moffitt's interest in the truck, the parties could still reasonably argue that the transfer was a fraudulent conveyance, attempted by Litteral solely to evade his obligations to Barker under the divorce decree. Further, even if an ex parte conversation occurred, that does not render less than objectively reasonable Hochwalt's belief that Barker had a tenable claim.
{¶ 68} On the basis of the uncontradicted facts set forth in the court documents offered by Barker and Hochwalt, they had probable cause to seek to set aside the transfer. That Barker may not ultimately have been entitled to the remedy is immaterial. Otherwise, every failed attempt to recover property would result in liability for malicious prosecution. Because probable cause existed, Moffitt's malicious process claim fails. To the extent that her sixth assignment of error relates to the court's judgment on this claim, it is overruled.
{¶ 69} That a legal proceeding was set in motion with probable cause satisfies one element of Moffitt's abuse of process claim. To prevail on this claim, Moffitt must also show that this proceeding was "perverted to attempt to accomplish an ulterior purpose for which it was not designed." Based on our previous discussion, we conclude, even when the evidence is viewed in a light most favorable to Moffitt, that Barker's actions against Moffitt do not amount to a perverted attempt to accomplish a purpose for which the system was not designed. The court had power to void the transfer if it concluded that it was a fraudulent conveyance.
{¶ 70} Because we conclude that there is no genuine issue of material fact, and that Barker and Hochwalt are entitled to judgment as a matter of law upon Moffitt's abuse of process and malicious prosecution claims, we hold that summary judgment was properly rendered in their favor upon these claims, albeit for reasons different from those assigned by the trial court. Accordingly, Moffitt's first assignment of error is overruled, and her sixth assignment of error is overruled in part.
 E. There are genuine issues of material fact precluding summary judgment in favor of Barker upon Moffitt's conversion claim.
{¶ 71} We now examine the trial court's judgment as it relates to Moffitt's conversion claims against Barker and Hochwalt. "[C]onversion is the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." Joyce v. Gen. Motors Corp. (1990),49 Ohio St.3d 93, 96, 551 N.E.2d 172, 175.
{¶ 72} We first address Moffitt's claim against Barker. "Conversion has been defined as an act of willful interference with a chattel, done without lawful justification, by which any person entitled thereto is deprived of use and possession. The fundamental idea underlying the tort is that of interference with the dominion or control over the chattel incident to some general or special ownership, rather than with the physical condition of the chattel itself." General MotorsAcceptance Corp. v. Birkett L.Williams Co. (1969), 17 Ohio Misc. 219,243 N.E.2d 882, 890 (emphasis added). "The intent required is not necessarily a matter of conscious wrongdoing. It is rather an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights * * * A mistake of law or fact is no defense. `Persons deal with the property in chattels or exercise acts of ownership over them at their own peril,' and must take the risk that there is no lawful justification for their acts." Prosser, Law of Torts (5 Ed. 1984) 92-93, Section 15.
{¶ 73} The central issue here is whether Moffitt is the owner of the truck. We conclude when the evidence is viewed in a light most favorable to Moffitt, there is a genuine issue of fact whether she owns the truck. Her recorded title, combined with her testimony that she gave consideration for the truck, without notice of Barker's claims, if credited in full, would establish an equitable interest in the truck superior to Barker's interest. If Moffitt does own the truck, then Barker's actions in taking it from her amount to a conversion. Accordingly, the trial court improvidently rendered summary judgment in favor of Barker on Moffitt's conversion claim, and her sixth assignment of error is sustained in part.
{¶ 74} F. There are no genuine issues of fact, and Hochwalt is entitled to judgment, as a matter of law, upon Moffitt's conversion claim against him.
{¶ 75} With respect to Moffitt's claim against Hochwalt for conversion, we conclude that the trial court properly rendered summary judgment in Hochwalt's favor. In Scholler v. Scholler (1984),10 Ohio St.3d 98, 462 N.E.2d 158, syllabus, the court held that attorneys are immune from liability to third parties unless they act with malice:
{¶ 76} "An attorney is immune from liability to third persons arising from his performance as an attorney in good faith on behalf of, and with the knowledge of his client, unless such third person is in privity with the client or the attorney acts maliciously."
{¶ 77} The rationale is explained by former Chief Justice Celebrezze in his dissenting opinion in Petrey v. Simon (1983),4 Ohio St.3d 154, 159, 447 N.E.2d 1285, 1289 (emphasis in original):
{¶ 78} "An attorney owes a primary duty to his client and must act accordingly. In a real sense, this principle is legally enforceable in light of the Code of Professional Responsibility. Specifically, E.C. 5-1 states:
{¶ 79} "`The professional judgment of a lawyer should be exercised, within the bounds of the law, solely for the benefit of his client and free of compromising influences and loyalties. Neither his personal interests, the interests of other clients, nor the desires ofthird persons should be permitted to dilute his loyalty to his client.'
{¶ 80} "Were the rule otherwise, an attorney would be faced with a sharp conflict of interest. On one hand, the attorney must have an interest in promoting and protecting the interests of his client. On the other hand, if no such immunity exists, an attorney may be reticent to advance the cause of his client out of fear of lawsuits by third persons arising out of the attorney's representation of his client. This proposition was well stated in Petrou v. Hale (1979), 43 N.C. App. 655,260 S.E.2d 130, at 661:
{¶ 81} "`* * * If an attorney whose primary duty is to promote the cause of his client in a light most favorable to him within the bounds of the law is also required to protect the rights of an adverse party, he will be caught in the midst of a conflict of interest. More importantly, if mere negligence in protecting the rights of an adverse party becomes the standard of liability, attorneys will be fearful of instituting lawsuits on behalf of their clients. The end result would be the limitation of free access to the courts.'"
{¶ 82} Here, Moffitt is hardly in privity with Barker. Thus, Moffitt may only maintain an action against Hochwalt for acts he undertook in litigation on behalf of his client if he acted maliciously. Malice implies "[a] condition of mind which prompts a person to do a wrongful act willfully, that is, on purpose, to the injury of another without justification or excuse." Black's Law Dictionary (6 Ed. 1990) 956. As we have explained, Hochwalt's actions in obtaining orders awarding title to the truck to his client had their justification in his good faith, even if ultimately erroneous, belief that the transfer of the truck from Litteral to Moffitt was a fraudulent conveyance. Accordingly, Moffitt's sixth assignment of error, as it relates to Hochwalt, is overruled.
{¶ 83} G. There are no genuine issues of material fact, and the West Carrollton police officers are entitled to judgment as a matter of law, upon the claims stated against them, because they were acting within the scope of their employment, neither maliciously, wantonly, recklessly, nor in bad faith, and were therefore within the scope of governmental immunity.
{¶ 84} Moffitt argues that the trial court erred by finding that the doctrine of governmental immunity, pursuant to R.C. 2744.03(A)(6), bars her claims against the West Carrollton police officers. She does not, however, attack the summary judgment rendered in favor of the city of West Carrollton or its police department. Specifically, she asserts that she presented sufficient evidence to show that the officers' actions in assisting Barker were manifestly outside the scope of their employment or that their actions were taken with malicious purpose, in bad faith, or in a wanton or reckless manner. In response, the officers contend that summary judgment was properly rendered because, even when the evidence is viewed in a light most favorable to Moffitt, the only reasonable conclusion is that they were acting within the scope of their employment, and neither maliciously, wantonly, recklessly, nor in bad faith.
{¶ 85} R.C. 2744 provides immunity to employees of political subdivisions engaged in governmental functions. R.C. 2744.03 provides, in relevant part:
{¶ 86} "(A) In a civil action brought against * * * an employee of a political subdivision to recover damages for injury, death, or loss to persons or property allegedly caused by any act or omission in connection with a governmental * * * function, the following defenses or immunities may be asserted to establish nonliability:
{¶ 87} "* * *
{¶ 88} "(6) In addition to any immunity or defense referred to in division (A)(7) of this section * * * the employee is immune from liability unless one of the following applies:
{¶ 89} "(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
{¶ 90} "(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
{¶ 91} "(c) Liability is expressly imposed upon the employee by a section of the Revised Code."
{¶ 92} Under the statute's provisions, a municipal entity cannot be held liable for an officer's actions committed during the commission of his duties unless one of the exceptions apply. Alley v. Bettencourt
(1999), 134 Ohio App.3d 303, 315, 730 N.E.2d 1067, 1074.
{¶ 93} We agree with the trial court, as does Moffitt, impliedly, that provision of police services and protections is a governmental function. Here, the issue is whether the police officers' conduct arose within the course and scope of their employment as employees of the police department. Or, alternatively, whether those actions were executed with malicious purpose, in bad faith or in a wanton or reckless manner. Moffitt claims that the officers' actions in assisting Barker to obtain possession of a truck that no longer belonged to her did not arise within the scope of their employment. Alternatively, she argues that at a minimum these actions were taken with a malicious purpose, in bad faith, or in a wanton or reckless manner, due to the fact that the officers could have discovered that Moffitt held a certificate of title to the vehicle in question. We disagree with both contentions.
{¶ 94} An officer acts within the scope of his duties if his actions are "initiated, in part, to further promote the master's business." Jackson v. McDonald (2001), 144 Ohio App.3d 301, 760 N.E.2d 24. Even if an employee's actions are in retrospect wrongful and unnecessary, improper, unjustified, or excessive, this "does not automatically take the act manifestly outside the scope of employment."Id. Indeed, "[i]t is only where the acts of * * * employees are motivated by actual malice or other [situations] giving rise to punitive damages that their conduct may be outside the scope of * * * employment * * * The act must be so divergent that it severs the employer-employee relationship."
{¶ 95} The undisputed facts demonstrate that the officers merely complied with two facially valid court orders awarding the truck to Barker, one of which expressly required police officers to assist Barker in obtaining the truck. Upon a review of these facts, and applying the law referenced above, we conclude that reasonable minds could only find that the officers' actions were committed within the scope of their employment.
{¶ 96} As to Moffitt's second claim, the trial court did not err in finding no genuine issue of material fact whether the officers acted with malicious purpose, in bad faith, or in a wanton or reckless manner. "Wanton" misconduct implies a failure to exercise any care, while "reckless" conduct pertains to "conduct that causes an unreasonable risk of harm and is `substantially greater than that which is necessary to make his conduct negligent.'" Alley, supra. The term "malice" refers to "the willful and intentional desire to harm another, usually seriously, through conduct which is unlawful or unjustified." Id. "Bad faith" refers to a "sinister motive that has `no reasonable justification.'"
{¶ 97} Moffitt argues that the officers could have discovered that she held title to the truck, and were malicious or reckless in failing to do so. In effect, she is asserting that police officers have an obligation to know the law that is superior to that of a judge who has issued an order, in the enforcement of which the officers are assisting. We reject this assertion. Even if the officers could be said to have been negligent, a proposition with which we do not necessarily agree, mere negligence is not enough to overcome the immunity afforded under Chapter 2744. Accordingly, Moffitt's actions against the police officers are barred pursuant to Chapter 2744, and her fifth assignment of error is overruled.
 III
{¶ 98} Moffitt's sixth assignment of error having been sustained in part, and her other assignments of error having been overruled, that part of the judgment of the trial court in favor of Barker upon Moffitt's conversion claim is reversed, the judgment of the trial court is affirmed in all other respects, and this cause is remanded for further proceedings consistent with this opinion.
GRADY and YOUNG, JJ., concur.