OPINION
{¶ 1} Trevor Martin ("Martin") appeals the June 21, 2002 judgment entry of the Portage County Municipal Court, Kent Division, accepting the jury's guilty verdict and imposing sentence. For the reasons set forth below, we affirm in part and reverse in part the decision of the trial court in this matter.
 {¶ 2} On September 30, 2001, as Matthew Bradford ("Bradford") was traveling in his vehicle, he observed an individual tear down an American flag from a flagpole located at a car dealership. Bradford passed the individual, who was also accompanied by two other individuals, and proceeded to turn around and drive by the location again. Upon the second passing, Bradford observed the same individual rip down another flag. Again he turned around to make another drive-by. In doing so, he observed the same individual with a flagpole in his possession. The individual was repeatedly smacking the flagpole on the ground in the vicinity of numerous vehicles.
 {¶ 3} Bradford proceeded to follow the three men to an apartment building. Bradford saw the individual who caused the damage enter the apartment building. Bradford then noticed a light illuminate in an apartment and observed the individual through a large window. Bradford called 911 to report the incident with an accompanying description of the individual who caused the damage.
 {¶ 4} Once Sergeant James Cole ("Sgt. Cole") arrived outside the apartment building, Bradford positively identified the individual as he stood in front of the window. Sgt. Cole entered the building and knocked on the suspected apartment. Getting no response, Sgt. Cole again knocked on the apartment door. Martin answered the door, but only cracked open the door about a foot. Sgt. Cole recognized Martin as the individual that Bradford positively identified.
 {¶ 5} After unsuccessfully attempting to have Martin exit his apartment by repeatedly asking Martin to do so, Sgt. Cole reached through the cracked door, grabbed Martin by the arm and pulled him into the hallway. Sgt. Cole escorted Martin to the patrol car and proceeded to pat him down. Throughout this whole time, Martin refused to cooperate, resulting in Sgt. Cole placing Martin in handcuffs and ordering him into the car. Again, Martin refused to cooperate forcing Sgt. Cole to push Martin towards the open door, where, eventually, Martin entered the vehicle on his own accord. Martin was taken to the police department and placed under arrest.
 {¶ 6} Martin was charged with criminal damaging and obstructing official business, both misdemeanors of the second degree. Martin pleaded not guilty to both charges. A jury trial commenced on April 15, 2002. Martin was found guilty of both charges. On June 21, 2002, the trial court sentenced Martin to 90 days on each charge, to be served consecutively, for a total sentence of 180 days. Martin's sentence was stayed pending appeal.
 {¶ 7} Martin timely appealed and raises the following assignments of error:
 {¶ 8} "[1.] The trial court erred in overruling appellant's motion for acquittal of the charge of obstructing official business.
 {¶ 9} "[2.] The jury's conviction of appellant for criminal damaging and obstructing official business was against the manifest weight of the evidence.
 {¶ 10} "[3.] Defendant-Appellant was denied the effective assistance of counsel as guaranteed by the Sixth andFourteenth Amendments to the U.S. Constitution and Article I, Section X of the Ohio Constitution where his counsel failed to file a motion to suppress."
 {¶ 11} In the interests of judicial economy, we will address Martin's third assignment of error first. Martin argues that defense "counsel's failure to file the motion to suppress the validity of the arrest prejudiced appellant's case because the outcome of the proceedings would have been different." Martin claims that the unlawful arrest tainted the obstructing official business charge.
 {¶ 12} To establish a claim of ineffective assistance of counsel, "the defendant must show that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." Strickland v. Washington (1984), 466 U.S. 668, 687.
 {¶ 13} "[T]he proper standard for attorney performance is that of reasonably effective assistance * * * [and] the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-688. A court "must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." Id. at 689. Thus, a defendant "must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Id., quoting Michel v. Louisiana (1955),350 U.S. 91, 101. "Debatable trial tactics generally do not constitute a deprivation of effective counsel." State v.Phillips, 74 Ohio St.3d 72, 85, 1995-Ohio-171.
 {¶ 14} "To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." State v. Seiber (1990), 56 Ohio St.3d 4, 11, citing Strickland, 466 U.S. at 695. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland, 466 U.S. at 691 (citation omitted).
 {¶ 15} "The failure to file a motion to suppress can only be considered reversible error if it prejudices appellant." Statev. Garrett (1991), 76 Ohio App.3d 57, 61, citing Kimmelman v.Morrison (1986), 477 U.S. 365. Counsel is not ineffective for failing to raise an unmeritorious claim. State v. Ratcliff
(1994), 95 Ohio App.3d 199, 206. The failure to file a motion to suppress, which possibly could be granted and which implicates matters critical to the defendant's defense, constitutes ineffective assistance of counsel. Garrett,76 Ohio App.3d at 63.
 {¶ 16} In Garret, this court found that the legality of the arrest was critical to the defendant's defense because the defendant was charged with resisting arrest, id., which requires a "lawful arrest." R.C. 2921.33(A). Likewise, in this case, the legality of the arrest is critical to Martin's defense because obstructing official business requires obstruction of the "performance of the public official's lawful duties." R.C.2921.31(A) (emphasis added). Thus, since the legality of the arrest is critical to Martin's defense, we must now determine whether there is "the possibility that [the motion to suppress] would have been" granted. Garrett, 76 Ohio App.3d at 63.
 {¶ 17} The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated * * *." The Fourth Amendment is enforceable against the states through the Due Process Clause of theFourteenth Amendment. Mapp v. Ohio (1961), 367 U.S. 643, 655. "At the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." Silverman v. United States (1961),365 U.S. 505, 511 (citation omitted). "[T]he Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." Payton v. New York (1980), 445 U.S. 573,590.
 {¶ 18} In this case, Sgt. Cole did not have a warrant. Moreover, there can be no doubt that Sgt. Cole's actions of reaching through the cracked door to grab Martin and pull him into the hall was, in fact, an entering into Martin's home. The state argues that Martin consented to Sgt. Cole's entrance by opening the door. In so arguing, the state cites to State v.Sutton, 7th Dist. No. 01-CA-181, 2002-Ohio-6901, State v.Schroeder (Oct. 26, 2001), 6th Dist. No. WD-00-076, 2001 Ohio App. LEXIS 4786, and State v. Asworth (Apr. 11, 1991), 10th Dist. No. 90AP-916, 1991 Ohio App. LEXIS 1623. These cases stand for the proposition that consent to enter can be implied by "opening a door and stepping back." Sutton, 2002-Ohio-6901, at ¶ 17 (citation omitted); Schroeder, 2001 Ohio App. LEXIS 4786, at *7 (citation omitted); Asworth, 1991 Ohio App. LEXIS 1623, at *13 (citation omitted). In this case, Martin only cracked the door while repeatedly refusing to exit into the hallway, and never made any gesture to imply that Sgt. Cole could enter Martin's home. Thus, we find that Martin did not consent to Sgt. Cole's entrance.
 {¶ 19} Based on these facts, we find that there is a possibility that a motion to suppress in this case would have been granted. We must note, however, that since the trial court was not able to examine the facts of this case, the court never had cause to determine if an exception to the warrant requirement existed, i.e. exigent circumstances. We must also note that the potential illegality of the arrest has no bearing on the outcome of the criminal damaging charge because "the illegality of [Martin's] detention cannot deprive [the state] of the opportunity to prove his guilt through the introduction of evidence wholly untainted by the police misconduct." UnitedStates v. Crews (1980), 445 U.S. 463, 474. Since the exclusionary rule "does not reach backward to taint information that was in official hands prior to any illegality," id. at 475, any evidence that the state obtained prior to the potential illegal arrest, including Bradford's observations and his positive identification of Martin, would not be tainted by the potential illegality.
 {¶ 20} We, therefore, find that the failure to file a motion to suppress denied Martin the effective assistance of counsel regarding the obstructing official business charge. Martin's third assignment of error has merit.
 {¶ 21} In his first assignment of error, Martin claims that there was no evidence to support the obstructing official business charge. Thus, Martin claims that the trial court should have granted his motion for acquittal on that count.
 {¶ 22} Since we found above that Martin was entitled to present a motion to suppress to the trial court regarding the potential illegality of the arrest, we cannot be sure what evidence regarding this count properly was adduced at trial. Thus, "[i]t would be premature for this court to decide [this] issue at this point in time." Garrett, 76 Ohio App.3d at 63. Martin's first assignment of error is moot.
 {¶ 23} In his second assignment of error, Martin argues that there was not adequate and credible evidence to support the jury's verdict of both the criminal damaging charge and the obstruction of official business charge. Although Martin couches his second assignment of error as one involving a manifest weight claim, Martin's argument under this assignment of error is more in the notion of a sufficiency claim.
 {¶ 24} Similar to Martin's first assignment of error, we cannot foresee what evidence regarding the obstruction charge would be properly admitted at trial. Thus, it is premature to rule on this issue. Thus, as it pertains to Martin's obstruction charge, Martin's second assignment of error is moot. However, since all the evidence pertinent to the criminal damaging charge was obtained prior to the potential illegal arrest, as discussed above, we will address Martin's second assignment of error as it pertains to this count.
 {¶ 25} "`Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while `manifest weight' contests the believability of the evidence presented." State v. Schlee
(December 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at *13. In reviewing the sufficiency of the evidence, we must determine "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. On the other hand, when reviewing a manifest weight argument, we must "review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Schlee, 1994 Ohio App. LEXIS 5862, at *15 (citation omitted) (emphasis omitted).
 {¶ 26} To prove criminal damaging, the state must prove that the defendant knowingly caused physical harm to any property of another without consent. R.C. 2909.06(A). "A person acts knowingly * * * when he is aware that his conduct will probably cause a certain result." R.C. 2901.22(B). "`Physical harm to property' means any tangible or intangible damage to property that, in any degree, results in loss to its value or interferes with its use or enjoyment." R.C. 2901.01(A)(4) (emphasis added).
 {¶ 27} In this case, a jury could reasonably conclude that all elements of criminal damaging had been proven beyond a reasonable doubt. Bradford testified that he observed Martin tear down numerous flags and smack a flagpole in the vicinity of numerous vehicles. David Morrison ("Morrison"), an employee of the car dealership, testified that seven flags were stolen or destroyed, that flagpoles had been bent, and that a new car had been damaged. Although Morrison did not have an estimate for all the damage, he did testify that the estimated damage to the flags was $191.00. Moreover, Morrison testified that Martin did not have consent to cause the damage. Even though Martin, as well as the two individuals who were with him on the night in question, testified that Martin did not cause the damage, granting the jury its due deference in weighing the above evidence and measuring the credibility of the witnesses, see State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus, we cannot find that the jury clearly lost its way and created such a manifest miscarriage of justice that Martin's conviction on the criminal damaging charge must be reversed and a new trial ordered.
 {¶ 28} Martin's second assignment of error, as it pertains to the criminal damaging charge, has no merit.
 {¶ 29} For the foregoing reasons, we hold that Martin's third assignment of error has merit, that his first assignment of error and the second assignment of error, as it pertains to the obstruction charge, are rendered moot, and that Martin's second assignment of error, as it pertains to the criminal damaging charge, is without merit. The decision of the Portgage County Municipal Court, Kent Division, is affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.
Ford, P.J., Rice, J., concur.