OPINION
{¶ 1} Appellant, Jay Delmonico, appeals his conviction on one count of tampering with evidence, a felony of the third degree. We affirm.
 {¶ 2} On June 23, 2001, a garage fire was reported at 5601 Adams Avenue in Ashtabula, Ohio. After extinguishing the fire, firefighters discovered certain unusual chemicals in the garage which fire personnel believed were related to the production of methamphetamine. The firefighters alerted the Ashtabula Police Department and Detective Taylor Cleveland was dispatched to the scene to investigate the chemicals. Upon his arrival, Detective Cleveland confirmed that the materials were known to be used in the manufacture of methamphetamine. Investigators from the Ashtabula Fire Department, the State Fire Marshal's Office, the United States Drug Enforcement Agency ("DEA"), and the Ohio Bureau of Criminal Identification and Investigation ("BCI") were contacted and arrived at the scene to assist in the investigation.
 {¶ 3} During the early stages of the investigation, Detective Cleveland interviewed Ray Phelps, the owner of the house, appellant, who was a resident, and another individual not involved in the investigation. Phelps subsequently signed a consent form giving the detective permission to search the house for any additional evidence of methamphetamine production. As he expected the investigation to involve the entire home, Detective Cleveland asked Phelps and appellant to remain outside; the men cooperated with Cleveland's request and agreed to draft separate statements regarding the events of that evening.
 {¶ 4} During the search of the house, police found evidence of a "marijuana grow operation," but no marijuana. The officers also discovered several guns and a small plastic bag containing a white residue which lab technicians were unable to identify. In the basement, Cleveland discovered a Pyrex beaker resembling other beakers located in the burnt garage. The beaker contained a residue similar to that found on certain items within the garage; Cleveland believed the beaker was related to methamphetamine production and noted its location for proper evidentiary collection.
 {¶ 5} Detective Cleveland received Phelps's and appellant's statements and advised the men that they were free to re-enter their residence as the investigation would likely continue for some time.[1] However, the detective specifically instructed the men not to touch anything in the house as evidence had not been completely collected.
 {¶ 6} In discussing his statement, appellant informed Detective Cleveland that one Richard Prinkey occasionally lived in the second floor of the garage. Appellant communicated his suspicion that Prinkey was involved in certain criminal activity such as dealing methamphetamines from the garage. The detective contacted Prinkey who admitted that he ran the methamphetamine lab; Prinkey did not implicate Phelps or appellant in the operation.
 {¶ 7} Detective Cleveland ultimately advised a DEA agent of the glass beaker in the basement. However, when the men arrived in the basement, the beaker was missing. The detective located Phelps and appellant in the house and questioned them about the missing beaker. After some "prodding," appellant stated "he had taken the beaker and that he had smashed it and thrown it in the garage." Appellant stated he "knew what the beaker was used for" and "didn't want it in the house." Detective Cleveland testified that he intended to check the beaker for fingerprints which might implicate others in the production of methamphetamine; however, as the beaker was smashed, no fingerprints could be pulled from its remains.
 {¶ 8} Appellant was arrested and indicted on one count of tampering with evidence, in violation of R.C. 2921.12(A)(1), a felony of the third degree. Appellant's trial counsel filed a proper request for discovery under Crim.R. 16 and a Request for Notice of Intent to Use Evidence under Crim.R. 12. The prosecution responded by providing various statements and documents, including a field report filed by Detective Cleveland. The documents and statements indicated that the state intended to introduce evidence of appellant's oral confession in his home. Trial counsel filed no motion to suppress and the matter was set for a jury trial. After a short trial, the jury convicted appellant. The trial court subsequently sentenced appellant to a four year term of incarceration. Appellant now appeals and assigns the following errors for our review:
 {¶ 9} "[1.] Appellant Jay Michael Delmonico was denied effective assistance of counsel because his appointed counsel failed to move to suppress a confession elicited by the sole witness for the prosecution by way of a hostile[,] custodial interrogation conducted without properMiranda warnings.
 {¶ 10} "[2.] The [t]rial [c]ourt failed to apply the sentencing requirements for imposition of sentence for a third degree felony, in violation of Chapter 2929 of the Ohio Revised Code, rendering the sentence null and void."
 {¶ 11} In his first assignment of error appellant alleges his counsel's representation was deficient for failing to file what appellant characterizes as a meritorious motion to suppress his confession. Appellant contends his confession was coerced by the investigating officer during a custodial interrogation instigated without proper Miranda
warnings. As the state's case against him was based solely upon the alleged coerced confession, appellant concludes he was prejudiced by his trial counsel's omission.
 {¶ 12} For appellant to prevail on his claim of ineffective assistance of counsel we must first conclude that counsel's performance was deficient; that is, counsel's acts or omissions must fall measurably below that which might be expected from an ordinary fallible attorney. Second, we must conclude that counsel's deficient performance prejudiced appellant's defense. See, Strickland v. Washington (1984), 466 U.S. 668,687. To establish prejudice, appellant must show, but for counsel's unprofessional errors, the result of the proceeding would have been different. State v. Seiber (1990), 56 Ohio St.3d 4, 11.
 {¶ 13} A reviewing court indulges a strong presumption that counsel's conduct is within the wide range of reasonable professional representation. Strickland, supra, at 689. An attorney's arguably reasoned strategic or tactical decisions do not generally constitute ineffectiveness. State v. Phillips, 74 Ohio St.3d 72, 85, 1995-Ohio-171.
 {¶ 14} Appellant notes that the failure, by trial counsel, to file a motion to suppress renders his or her assistance ineffective where the appealing party is prejudiced. State v. Martin, 11th Dist. No. 2002-P-0072, 2004-Ohio-3027, at ¶ 15. Appellant contends he can meet this burden by showing the mere possibility the motion to suppress, had it been properly filed, would have been granted. See, State v. Garrett
(1991), 76 Ohio App.3d 57, 63. Because, in appellant's view, the trial court could have possibly determined his confession was precipitated by a custodial interrogation, counsel's omission constituted ineffective assistance of counsel.
 {¶ 15} Before proceeding further, we must first discuss the proper standard in relation to the instant issue. This court has held a failure to file a motion to suppress satisfies Strickland's "prejudice" prong when there is evidence in the record to support the conclusion that the motion to suppress could possibly have been granted." (Emphasis added.) See, e.g., State v. Payton (1997), 119 Ohio App.3d 694, 705; see also, State v. Martin, supra at, ¶ 15; State v. Santana (Nov. 5, 1999), 11th Dist. No. 98-A-0084, 1999 Ohio App. LEXIS 5228, at 7; State v.Powell (Dec. 31, 1998), 11th Dist. No. 97-L-253, 1998 Ohio App. LEXIS 6358, at 6; Garrett, supra, at 63. This rule was announced first inGarrett, supra, and has been cited as recently as last year in Martin,
supra. However, our position on this matter requires some re-examination and clarification.
 {¶ 16} In State v. Santana, supra, this court reversed a defendant's conviction holding the defendant received ineffective assistance of counsel due to counsel's failure to file a motion to suppress evidence obtained as a result of questionable "Terry level" stop. In particular, we held:
 {¶ 17} "* * * we believe there is a possibility that [the officer] did not have sufficient reasonable suspicion to stop appellant and, therefore, a motion to suppress may have been successful." Id. at 8.
 {¶ 18} The state appealed to the Supreme Court of Ohio who accepted discretionary jurisdiction. In State v. Santana, 99 Ohio St.3d 513,2001-Ohio-7, the Supreme Court of Ohio reversed this court's holding on the authority of State v. Lott (1990), 51 Ohio St.3d 160, 174-176.
 {¶ 19} In Lott, the Supreme Court addressed the issue of whether counsel is ineffective for failure to file a motion to suppress evidence of an eyewitness identification. In holding that trial counsel did not render ineffective assistance, the court underscored that the standard announced in Strickland, supra, provided the proper means of analyzing the claim. As emphasized above, Strickland requires an appellant to show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced his defense. To demonstrate prejudice, an appellant must prove there exists a reasonable probability that, but for counsel's errors, the result of the trial would have been different. See, Strickland, at 694.
 {¶ 20} Our previous holding suggests the mere "possibility" that the motion would be granted is sufficient to demonstrate prejudice underStrickland. However, according to Strickland, the possibility that a suppression motion would have been granted does not prove there exists a reasonable probability that, but for counsel's omission, the result would have been different.[2] Hence, to establish prejudice, an appellant must prove more than a mere possibility that the motion could have been granted; rather, he or she must show a reasonable probability that, but for the omission, the result of the proceedings would have been different.
 {¶ 21} With this in mind, we must explore the facts of this case and determine whether Miranda warnings were necessary.[3]
 {¶ 22} Miranda warnings exist "solely to counterbalance the coercive atmosphere created by in-custody interrogation." State v. Schrock (Nov. 8, 1991), 11th Dist. No. 89-L-14-099, 1991 Ohio App. LEXIS 5361, at 7. In determining whether Miranda applies, we must determine whether the incriminating statements at issue were a result of a custodial interrogation. See, State v. Buchholz (1984), 11 Ohio St.3d 24, 26. The ultimate inquiry here is whether there was a formal arrest or a restraint of appellant's freedom of movement commensurate with that of a formal arrest. California v. Beheler (1983), 463 U.S. 1121, 1125. Here, appellant was not formally arrested; thus, we shall direct our attention toward the nature of the restraint (if any) on appellant's freedom of movement. In analyzing this issue, we bear in mind "the only relevant inquiry is how the reasonable [person] in the suspect's position would have understood [his or her] situation." Berkemer v. McCarty (1984),468 U.S. 420, 442.
 {¶ 23} Miranda makes it clear that the Miranda warnings must be given whenever one's "freedom of action is curtailed in any significant way from being compelled to incriminate themselves." (Emphasis added.)Miranda v. Arizona (1966), 384 U.S. 436, 467. If a party has beensignificantly deprived of his or her freedom, he or she is in custody andMiranda applies. If, on the other hand, there is a deprivation of freedom of action but it is insignificant, there is no custodial interrogation. "The deprivation of freedom sufficient to create a `custodial interrogation' situation need not be as great as an arrest, Orozco v.Texas (1969), 394 U.S. 324, but it must be more than general onthe-scene questioning." State v. Smith (Dec. 12, 1981), 8th Dist. No. 43490, 1981 Ohio App. LEXIS 13508.
 {¶ 24} In the case at hand, it appears from the record that appellant was not deprived of his freedom in any significant way. The record demonstrates that, upon arrival at appellant's residence, investigators discovered evidence of a methamphetamine lab in the burnt garage. In light of this discovery, Detective Cleveland asked appellant and Phelps: (1) for permission to look for contraband in their house and (2) if appellant and Phelps could provide officers individual statements concerning events that evening. During this exchange, the men were not deprived of their freedom and there was no evidence of coercion or force on the part of the officers.
 {¶ 25} While the officers were searching the house, appellant and Phelps were required to remain outside of the residence. The men were neither formally detained nor questioned during this period. After the discovery of some contraband, including the beaker, Detective Cleveland told appellant and Phelps they could re-enter the residence; at trial, Cleveland testified:
 {¶ 26} "After we located the beaker and the other items inside the house, we exited the residence and spoke with both Mr. Phelps and Mr. Delmonico, took written statements from them about the incident and told them that since we were going to be there for quite a long time, in fact we were there for 14 hours, they were free to enter back into the residence and not sit in the lawn but not to touch anything in the house as it would be collected as evidence. They were specifically instructed not to touch anything inside the house because we hadn't collected our evidence yet."
 {¶ 27} There was no evidence that appellant and/or Phelps experienced any restraint on their freedom after they were re-admitted to their residence.
 {¶ 28} Ultimately, Detective Cleveland and a DEA agent went to retrieve the beaker but it had vanished. Cleveland questioned appellant and Phelps regarding the disappearance of the beaker. Appellant initially denied tampering with the beaker; however, after some "prodding," appellant admitted to smashing the beaker because he knew "what the beaker was used for" and "didn't want it in the house."
 {¶ 29} The record demonstrates that appellant was free to meander in and out of his residence during the officers' investigation. The only overt restraint placed upon appellant's freedom to act was Detective Cleveland's advisory statement not to touch anything in the house as the evidence had not yet been collected. There is no evidence that appellant suffered any restraint on his freedom of movement at this point.
 {¶ 30} Although Detective Cleveland testified to "prodding" appellant about the beaker's disappearance, there is no evidence that appellant's freedom of action was significantly curtailed; nor were the circumstances tantamount to a formal arrest. In light of the evidence presented, we hold, as a matter of law, appellant was not in custody and was not entitled to Miranda warnings.[4]
 {¶ 31} Moreover, we acknowledge Detective Cleveland's testimony that he "prodded" appellant while questioning him. Indelicate connotations aside, we do not know the specific nature of the detective's actions because his method of interrogation was not explored at trial. Nevertheless,
 {¶ 32} "* * * a noncustodial situation is not converted to one in which Miranda applies simply because a reviewing court concludes that, even in the absence of any formal arrest or restraint on freedom of movement, the questioning took place in a `coercive environment.' Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. * * * Miranda warnings are required only where there has been such a restriction on a person's freedom as to render him `in custody.' It was that sort of coercive environment to which Miranda by its terms was made applicable, and to which it is limited." Oregon v. Mathiason (1977), 429 U.S. 492, 495.
 {¶ 33} As we hold appellant was not in custody when Detective Cleveland questioned him about the missing beaker, there could be no custodial interrogation prompting Miranda warnings. Because appellant was not entitled to Miranda warnings, appellant cannot meet the prejudice prong of Strickland. We therefore hold appellant's trial counsel was not ineffective for failing to file a motion to suppress. Trial counsel could have reasonably determined that such an effort would be futile given the noncustodial nature of the interrogation. To the extent his or her methods are reasonable, counsel is granted a great measure of deference in selecting a trial strategy. Under the circumstances, we do not believe trial counsel was unreasonable for failing to file a motion to suppress the confession. Appellant's first assignment of error is overruled.
 {¶ 34} In his second assignment of error, appellant takes issue with the trial court's sentencing procedure. To wit, appellant argues that the trial court was required to consider the "recidivism" and "seriousness" factors set forth under R.C. 2929.12 (B) — (E). However, appellant contends the record is devoid of any such consideration.
 {¶ 35} To accomplish the purposes and principles of R.C. 2929.11, a trial court is required to consider the factors set forth under R.C.2929.12. State v. Comer, 99 Ohio St.3d 463, 2003-Ohio-4165, ¶ 13. While a court is required to consider all relevant factors set forth under R.C. 2929.12 (B)-(E) in arriving at its sentence, "[t]he code does not specify that the sentencing judge must use specific language or make specific findings on the record in order to evince the requisite consideration of the applicable seriousness and recidivism factors."State v. Arnett, 88 Ohio St.3d 208, 215, 2000-Ohio-302. Further, we have previously held the court's consideration "can be derived from the record of the sentencing hearing and/or the judgment entry imposing sentence."State v. Carter, 11th Dist. No. 2003-P-0007, 2004-Ohio-1181, at ¶ 46.
 {¶ 36} Here, during the sentencing hearing, the trial court pointed out appellant's "bad prior criminal record" which included a "lengthy and serious" juvenile record. The court further observed appellant had previously served time in prison. With respect to the specific features of the charge in question, the court noted:
 {¶ 37} "[I]t is pretty clear that there was an investigation that was going on * * * into what was obviously a serious drug offense.
 {¶ 38} "You certainly had knowledge of that and whatever you may have thought or whatever may have motivated your decision in this case to break that beaker or whatever it was, the jury determined and I believe that it was with the specific intention to hamper that drug investigation knowingly destroying the evidence with that specific intention and being aware that that investigation was in progress and I think that makes this a very serious offense."
 {¶ 39} In light of this recitation, it is clear the court engaged in an explicit weighing of relevant seriousness and recidivism factors applicable to the instant matter.
 {¶ 40} Moreover, in its "Judgment Entry on Sentence," the trial court stated:
 {¶ 41} "The Court has considered the record, oral statements, any victim impact statement, the presentence report, the purposes and principles of sentencing under RC 2929.11 [sic], the seriousness and recidivism factors relevant to the offense and offender pursuant to RC2929.12, and the need for deterrence, incapacitation, rehabilitation, and restitution."
 {¶ 42} The foregoing statement is sufficient to meet the demands of R.C. 2929.12 and Arnett, supra. Hence, while illuminating as to the court's position regarding the seriousness and recidivism factors, the sentencing judge's in-court recitation was supererogatory for purposes of R.C. 2929.12. Appellant's final assignment of error is without merit.
 {¶ 43} For the reasons set forth above, appellant's two assignments of error are without merit and the Judgment of the Ashtabula County Court of Common Pleas is therefore affirmed.
Grendell, J., concurs, O'Neill, J., dissents with Dissenting Opinion.
[1] The record indicates the entire investigation lasted for approximately fourteen hours.
[2] In terms of the logic of causality, "A" is a necessary condition for "B" when "B" cannot exist without "A." Alternatively, "A" is a sufficient condition for "B" when "A" is enough to guarantee that "B" exists. Here, the "possibility" that a motion could be granted is a necessary condition for establishing an ineffective assistance claim. However, possibility is not a sufficient to establish prejudice because the mere possibility that the motion could be granted is not enough to guarantee prejudice under Strickland.
[3] The state aptly points out that there is no evidence in the record which supports or discredits appellant's assertion that he was notMirandized prior to questioning. This is true and thus appellant's contention assumes what needs to be proved; namely, that no warnings were issued. However, for sake of comprehensiveness, we shall assume appellant was not issued Miranda warnings and address his substantive argument.
[4] As indicated above, Strickland's "reasonable probability" standard must be used in analyzing the prejudice prong of a claim for ineffective assistance of counsel; however, even were we to employ the "possibility" standard set forth and rejected above, appellant's argument would still fail because he did not provide adequate evidence that he was in custody as a matter of law.