OPINION
{¶ 1} Plaintiff-appellant, Joseph Maggio ("Joseph"), appeals from the judgment of the Trumbull County Court of Common Pleas, granting summary judgment in favor of defendant-appellee, the City of Warren, Ohio ("City"). For the reasons that follow, we affirm the judgment of the lower court.
 {¶ 2} On October 14, 2004, Joseph and his wife, Clara Maggio, now deceased, filed a suit against the City and "unnamed police officers," alleging that they deprived them of their rights, privileges, and immunities under the United States and Ohio Constitutions and Ohio Statutory Law.
 {¶ 3} Joseph and Clara alleged that the officers unlawfully entered their home, assaulted Joseph, arrested him without cause, refused to secure him medical attention while in police custody and caused him severe emotional distress. The complaint also raised a claim of malicious prosecution with respect to Joseph. Clara alleged that the officers entered her bedroom without privilege, which resulted in her falling and suffering a broken foot and other physical injuries. Clara also alleged that the unnamed officers failed to secure medical assistance for her following her fall, and caused her severe emotional distress. The complaint sought both compensatory and punitive damages with respect to all claims against the City and the unnamed officers.
 {¶ 4} The complaint arose from events occurring on October 13, 2003. At approximately 11:15 p.m., Warren Police received a 911 call from Teresa Cain, the assistant manager at Lit'l Mac's convenience store on Parkman Road, in Warren, Ohio.
 {¶ 5} According to Cain's deposition testimony and the 911 tapes, which were introduced and played during the various depositions, Cain, a former girlfriend of Vincent Maggio, Joseph's brother, called police informing the dispatcher that she had received multiple calls from Vincent earlier that evening. Vincent called Cain demanding that she leave her job, and threatening to come to the store and kill her if she did not. According to Cain's deposition testimony, Vincent, who suffered from mental illness, wanted her to immediately quit her job at Lit'l Mac's because black people worked there and frequented the store as customers.
 {¶ 6} Cain testified that she had not dated Vincent for a number of years, and had only seen him infrequently since that time. A few days earlier, the two resumed contact with each other when Vincent loaned Cain some money and helped her fix her car. As the result of Vincent's threatening phone calls, Cain requested that police be sent to Lit'l Mac's.
 {¶ 7} Approximately 15 minutes later, Cain called 911 a second time to report that Vincent had arrived in a white van outside of Lit'l Mac's and was standing out in the parking lot screaming at her and threatening to hurt her. After being informed that officers were en route to Lit'l Mac's and would arrive shortly, the second call ended.
 {¶ 8} Approximately three minutes later, Cain called police dispatch a third time, stating that Vincent was about to enter the store and come after her. On the 911 tape, a man can be heard yelling and screaming in the background and demanding his money while other individuals tried to get him out of the store. Cain advised the dispatcher that Vincent had left the store and was threatening to get a gun. The dispatcher asked Cain if she could read the license plate number on the van, and Cain was able to comply. While on the phone with the dispatcher, police arrived and Vincent drove off at a high rate of speed, with officers in pursuit.
 {¶ 9} Vincent led police on a high-speed chase through downtown Warren, and eventually was able to elude them. One of the pursuing officers, who was familiar with Vincent from other encounters, heard Vincent's name on the radio and advised other officers that Vincent's brother lived nearby and he might have gone there. The officers then proceeded to Joseph Maggio's home, located at 254 Kenmore, NE, in Warren.
 {¶ 10} Upon arrival, police officers discovered Vincent's van was parked behind the house, and set up a perimeter around Joseph's home. Affidavits from police on the scene, which were attached to the City's motion for summary judgment, indicate that officers observed Vincent inside the home attempting to hide from view. In his deposition, Joseph did not deny that Vincent was in the home, but claimed that he was unaware that Vincent had fled from police.
 {¶ 11} The police knocked on the door and Joseph answered. Joseph asked the police why they were at his home. Joseph stated that he informed police that his wife, Clara, was ill and resting in the bedroom, and requested that they not disturb her. Joseph claimed that he refused police entry to his home unless they could show him a search warrant. Joseph averred that after he refused to consent to the officers entering his home, they immediately instigated a physical altercation, knocking him to the ground and hitting him repeatedly.
 {¶ 12} Police took Joseph into custody and entered the home to apprehend Vincent. Joseph alleged that the sounds of his altercation with police disturbed Clara, who called 911, thinking that someone was breaking into her house. According to Clara's citizen complaint, filed on November 4, 2003, police officers entered her bedroom and demanded that she leave, despite the fact that she informed them she was ill. Clara's citizen complaint alleged that, after the police searched the house, she was left alone in the kitchen, where due to her weakened condition, she lost her balance and fell, injuring her foot and her leg. Clara's complaint further alleged that after falling, she called out to police for assistance, but they refused to come to her aid.
 {¶ 13} Police transported Joseph and Vincent to the Warren Police Station, where Joseph was booked and charged with one count of Obstructing Justice, and one count of Resisting Arrest before being released from custody. Joseph claims that while he was being transported to the police station and held in police custody, he made repeated requests for medical treatment, but was refused.
 {¶ 14} The Maggios' citizen complaints were investigated by Lt. Joseph Marhulik of the Warren Police Department. As the result of his investigation, Marhulik concluded that he found "no violation" of department policies or "Ohio Law as he understood it," and that exigent circumstances existing at the time of the arrest justified police entry into the Maggio home.
 {¶ 15} Joseph and Clara subsequently filed the instant action, seeking relief under 42 U.S.C § 1983, and various state law tort theories.
 {¶ 16} Clara died on March 20, 2005. The City filed a suggestion of death with the trial court on March 25, 2005. On August 5, 2005, Joseph filed a motion of substitution, pursuant to Civ. R. 25, naming himself as successor in interest to Clara's claims as executor of her estate.[1]
 {¶ 17} On August 9, 2005, the City filed its motion for summary judgment. In its motion, the City argued that it was entitled to summary judgment as a matter of law on the Maggios' § 1983 claim, since the statute does not provide for vicarious liability under a respondeat superior theory. The City further argued that it was entitled to summary judgment on the Maggios' various state law tort claims on the basis of the sovereign immunity statutes, as found in R.C. Chapter 2744.
 {¶ 18} On September 9, 2005, Joseph fled a motion in opposition to the City's motion for summary judgment. Included in his motion for summary judgment was a motion to strike the affidavits of Kathleen Lampardo, a dispatcher for the Warren Police Department, Lt. Marhulik, and Exhibit H, a report detailing Marhulik's investigation of the incident. On September 20, 2005, the City filed a motion in opposition to Joseph's motion to strike.
 {¶ 19} On January 27, 2006, the trial court entered judgment denying Joseph's motion to strike and granting summary judgment in favor of the City.
 {¶ 20} On February 24, 2006, Joseph timely filed his notice of appeal, assigning the following as error:
 {¶ 21} "THE TRIAL COURT ERRED WHEN IT ENTERED SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANT CITY OF WARREN."
 {¶ 22} As an initial matter, it is important to distinguish between the respective claims asserted by Joseph in his complaint.
 {¶ 23} In his complaint under 42 U.S.C § 1983, Joseph alleges that his constitutional rights, under the Fourth andFourteenth Amendments of the United States Constitution, were violated by both the City and the "unnamed police officers" on the basis that the "policy, practices and customs" of the City encouraged or caused the officers to execute unconstitutional searches and seizures, use excessive force to effectuate arrests without the requisite probable cause, and deny and prevent his prompt medical treatment while he was in the care and custody of the police. Furthermore, Joseph's claim alleges that the City's refusal to adequately, "train, direct, supervise or control" these "unnamed police officers" was instrumental in the deprivation of his constitutional rights.
 {¶ 24} Joseph's state tort claims against the City and the "unnamed police officers" are for assault and battery, false arrest, "malicious prosecution," and intentional and negligent infliction of emotional distress.
 {¶ 25} We address Joseph's state law claims first. Joseph argues that the City failed to meet its initial burden to show that it was entitled to summary judgment as a matter of law on Joseph's state claims on the basis of sovereign immunity. The City argues that it was entitled to judgment as a matter of law due to the fact that it is immune from liability pursuant to Ohio's sovereign immunity statutes as codified in R.C. Chapter 2744, and because Joseph failed to introduce evidence to meet his reciprocal burden under Civ. R. 56(E). We agree.
 {¶ 26} "Summary judgment is a procedural device to terminate litigation and to avoid a formal trial when there is nothing to try."Murphy v. Reynoldsburg, 65 Ohio St.3d 356, 358-9, 1992-Ohio-95. A trial court's decision to grant summary judgment involves only questions of law, thus, an appellate court conducts a de novo review of the trial court's judgment. Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105,1996-Ohio-336. A de novo review requires the appellate court to conduct an independent review of the evidence before the trial court without deference to the trial court's decision. Brown v. Cty. Commrs. of SciotoCty. (1993), 87 Ohio App.3d 704, 711 (citation omitted).
 {¶ 27} Under Civ. R. 56(C), summary judgment is proper when: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. Grafton, 77 Ohio St.3d at 105;Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66. In reviewing a motion for summary judgment, the court must construe the evidence in the light most favorable to the nonmoving party. Doe v.Shaffer, 90 Ohio St.3d 388, 390, 2000-Ohio-186 (citation omitted).
 {¶ 28} The rule further provides that "[s]ummary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Civ. R. 56(C) (emphasis added).
 {¶ 29} "[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court for the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." Dresher v. Burt, 75 Ohio St.3d 280, 293, 1996-Ohio-107. "If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied." Id.
 {¶ 30} However, if the moving party satisfies its initial burden, the nonmoving party then has a reciprocal burden, outlined in Civ. R. 56(E), to set forth specific facts showing that there is a genuine issue for trial. If the nonmovant fails to do so, summary judgment will be entered against the nonmoving party. Id.; Wing v. Anchor Media, Ltd. (1991),59 Ohio St.3d 108, at paragraph three of the syllabus (a properly supported motion for summary judgment "forces the nonmoving party to produce evidence on any issue for which that party bears the burden of production at trial").
 {¶ 31} The common-law concept of sovereign immunity has been largely codified in Ohio Revised Code Chapter 2744. See Wilson v. Stark Cty.Dept. of Human Servs., 70 Ohio St.3d 450, 453, 1994-Ohio-394. "Whether immunity may be invoked is a purely legal issue, properly determined by the court prior to trial * * * and preferably on a motion for summary judgment." Nease v. Medical College Hosp., 64 Ohio St.3d 396, 400,1992-Ohio-97 (citations omitted); Conley v. Shearer, 64 Ohio St.3d 284,292, 1992-Ohio-133; see also, Wamsley v. Village of W. Jefferson (2000),139 Ohio App.3d 170, 172 ("[t]he issue of whether sovereign immunity is applicable in a particular case is the proper subject of a summary judgment motion").
 {¶ 32} R.C. 2744.02(A)(1) provides as follows:
 {¶ 33} "For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."
 {¶ 34} "R.C. Chapter 2744 provides nearly absolute immunity to political subdivisions in order to limit their exposure to money damages." Sabulsky v. Trumbull Cty., 11th Dist. No. 2001-T-0084, 2002-Ohio-7275, at ¶ 11.
 {¶ 35} The Ohio Supreme Court has set forth a three-tiered analysis to determine whether a political subdivision is immune from tort liability: The first tier is to establish immunity under R.C. 2744.02(A)(1); the second tier is to analyze whether any of the exceptions to immunity under R.C. 2744.02(B) apply; if so, then under the third tier, the political subdivision has the burden of showing that one of the defenses of R.C. 2744.03 applies, and if so, immunity is reinstated. Cater v.Cleveland, 83 Ohio St.3d 24, 28, 1998-Ohio-421; Hubbard v. Canton CitySchool Bd. of Edn., 97 Ohio St.3d 451, 2002-Ohio-6718, ¶¶ 11-12.
 {¶ 36} For the purposes of the immunity statutes, the City qualifies for general immunity since it is a political subdivision. R.C. 2744.01(F) ("'Political subdivision' means * * * a municipal corporation * * * responsible for governmental activities in a geographic area smaller than that of the state.") Governmental functions include "[t]he provision * * * of police * * * services or protection." R.C. 2744.01(C)(2)(a); see also Ziegler v. Mahoning Cty. Sheriff's Dept.
(2000), 137 Ohio App.3d 831, 835, citing Whitler v. McFaul (1997),123 Ohio App.3d 199, 203. Thus, the City has satisfied the first prong of the Cater test and is entitled to immunity under R.C. 2744.02(A)(1).
 {¶ 37} R.C. 2744.02 removes the general statutory presumption of immunity for political subdivisions only under the following express conditions: (1) the negligent operation of a motor vehicle by an employee, R.C. 2744.02(B)(1); (2) the negligent performance of proprietary functions, R.C. 2744.02(B)(2); (3) the negligent failure to keep public roads open and in repair, R.C. 2744.02(B)(3); (4) the negligence of employees occurring within or on the grounds of certain buildings used in connection with the performance of governmental functions, R.C. 2744.02(B)(4); (5) express imposition of liability by statute, R.C. 2744.02(B)(5). Sabulsky, 2002-Ohio-7275, at ¶ 13, citingEngleman v. Cincinnati Bd. of Edn. (Jun. 22, 2001), 1st Dist. No. C-000597, 2001 Ohio App. LEXIS 2728, at *8.
 {¶ 38} Once general immunity has been established by the political subdivision, the burden lies with the plaintiff to show that one of the recognized exceptions apply. See e.g., Ramey v. Mudd,154 Ohio App.3d 582, 2003-Ohio-5170, at ¶ 16; cf. Ziegler, 137 Ohio App.3d at 836, ("the defenses and immunities found in R.C. 2744.03 * * * do not come into play until after it is proven that a specific exception to general immunity applies under R.C. 2744.02"); Summers v. Slivinsky, 141 Ohio App.3d 82,87, 2001-Ohio-3169, overruled on other grounds by Allied ErectingDismantling Co. v. Youngstown, 151 Ohio App.3d 16, 2002-Ohio-5179
("third-tier defenses are only relevant in determining the immunity of a political subdivision where a plaintiff has shown that a specific exception to immunity under R.C. § 2744.02(B) applies"). (Citations omitted) (emphasis added).
 {¶ 39} A review of the pertinent statutory exceptions reveals that none apply to the instant case. The first four exceptions are concerned with certain narrowly-construed categories of negligent acts, none of which apply here. The remaining claims alleged against the City are intentional tort claims, which are, by the express terms of the statute, not subject to any exception under R.C. 2744.02(B). Sabulsky, 2002-Ohio-7275, at ¶ 14; Wilson v. Stark Cty. Dept. of HumanServs., 70 Ohio St.3d 450, 452, 1994-Ohio-394; Thayer v. W. CarrolltonBd. of Edn., 2nd Dist. No. 20063, 2004-Ohio-3921, at ¶ 14 ("[b]ecause an intentional tort is not the result of negligence, an intentional tort is not an exception to the broad immunity generally enjoyed by political subdivisions") (citations omitted).
 {¶ 40} Joseph cites to no relevant statutory authority expressly imposing liability with respect to any of his alleged claims. Under these circumstances, the trial court did not err, as a matter of law, by granting summary judgment in favor of the City on the grounds of sovereign immunity.
 {¶ 41} We now turn to the issue of the liability of the individual police officers under the immunity statutes. Joseph cites to the case ofAlley v. Bettencourt (1999), 134 Ohio App.3d, 303, to support his argument that summary judgment was not appropriate since he offered evidence, by means of his affidavit and citizen complaint, which demonstrated that the police officers in question were not immune under R.C. 2744.03(A)(6), since they acted recklessly, in bad faith, and with malice when effectuating the search of his home and his arrest.Alley held that "[e]mployees of a political subdivision are immune from liability unless the employees' acts or omissions `were manifestly outside the scope of employment or official responsibility' or `were with malicious purpose, in bad faith, or in a wanton or reckless manner.'" Id. at 315, citing R.C. 2744.03(A)(6). Joseph's reliance onAlley is misplaced.
 {¶ 42} "Much like the immunity granted to political subdivisions, R.C. 2744.03(A)(6) generally immunizes employees from liability so long as none of the enumerated exceptions applies." Campbell v. Burton,92 Ohio St.3d 336, 344, 2001-Ohio-206 (Cook, J. dissenting). One of the applicable exceptions is whether "[t]he employees' acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." R.C. 2744.03(A)(6)(b).
 {¶ 43} Even if we were to assume, arguendo, that Joseph had met his burden with respect to the police officers' actions being either malicious or reckless, he is not entitled to summary judgment on this issue. "Immunity of a state employee is a question of law and for such a question there is no right to a trial by jury." Nease,64 Ohio St.3d at 400 (citation omitted).
 {¶ 44} As mentioned earlier, Joseph filed his complaint against the City and various "unnamed police officers."
 {¶ 45} Civ. R. 3(A) states: "A civil action is commenced by filing a complaint with the court, if service is obtained within one year from such filing upon a named defendant * * * or upon a defendant identified by a fictitious name whose name is later corrected pursuant to Civ. R. 15(D)." (Emphasis added).
 {¶ 46} Civ. R. 15(D) provides: "When the plaintiff does not know the name of a defendant, the defendant may be designated in a pleading or proceeding by any name and description. When the name is discovered, the pleading or proceeding must be amended accordingly. * * * The summonsmust contain the words `name unknown,' and the copy thereof must beserved personally upon the defendant." (Emphasis added).
 {¶ 47} A review of the trial court record reveals that Joseph never amended his complaint to identify these "John Doe" defendants. Furthermore, there is no evidence on the record that the "unnamed officers" were ever served with a copy of the summons or the complaint, despite the fact that over a year had passed between when the complaint was filed and when summary judgment was granted. Since no action was ever commenced against any named officer pursuant to the plain terms of Civ. R. 3(A) and Civ. R. 15(D), "no judgment could be rendered with respect to these defendants." Harper v. New Philadelphia MunicipalCourt (Jun. 8, 1995), 10th Dist. No. 94APE12-1806,1995 Ohio App. LEXIS 2359, at *11, citing Dillard v. Nationwide Beauty School (Dec. 11, 1990), 10th Dist., 90AP-273, 1990 Ohio App. LEXIS 5542, at *7-*8. Thus, the trial court could not have erred, as a matter of law, by not addressing Joseph's arguments with respect to the unnamed officers.
 {¶ 48} With regard to Joseph's claims under 42 U.S.C. § 1983, the City moved for summary judgment, claiming that it was not liable, as a matter of law, under Section 1983, since a municipality cannot be held liable solely on the grounds of respondeat superior. Joseph argues that the trial court's grant of summary judgment in favor of the City was error, since the City failed to allege specific facts in support of its arguments.
 {¶ 49} "While a state court hearing a case brought under Section 1983, Title 42, U.S. Code is bound by the terms of [the] statute * * * as it relates to substantive law, it may proceed in matters of practice and procedure" according to state civil rules." Ohio Civil Service Emp.Assn. v. Moritz (1987), 39 Ohio App.3d 132, at paragraph one of the syllabus.
 {¶ 50} 42 U.S.C. § 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State * * * subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof, to deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." While Section 1983 "is not itself a source of substantive rights," it supplies "a method for vindicating federal rights elsewhere conferred." Dever v. Casbeer, 1st Dist. No. C-050106, 2005-Ohio-5860, at ¶ 10 (citations omitted). Thus, the protection for the "rights, privileges, or immunities" conferred by the statute is limited to those secured solely "by the Constitution or laws of the United States." Id. quoting Parratt v. Taylor (1981),451 U.S. 527, 535.
 {¶ 51} Here, Joseph alleges that the City violated his rights under the Fourth and Fourteenth Amendments of the United States Constitution
by entering his home without a warrant and using excessive force to effectuate an arrest.
 {¶ 52} The Fourth Amendment of the United States Constitution states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, support by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."
 {¶ 53} The Fourteenth Amendment states: "No State shall make or enforce any law which shall * * * deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." Joseph alleged that hisfourteenth amendment rights were violated by the unnamed officers' deliberate indifference to his medical needs when he was in police custody.
 {¶ 54} "It is a `basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." Payton v. New York (1980), 445 U.S. 573, 586 (citation omitted). The United States Supreme Court has made clear that "[i]n terms that apply equally to seizures of property and seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house." Id. at 590. "Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." Id.; see, also,State v. Howard (1991), 75 Ohio App.3d 760, 768; State v. Martin, 11th Dist. No. 2002-P-0072, 2004-Ohio-3027, at ¶ 17.
 {¶ 55} There is no dispute that police entered the Maggio home and arrested Joseph without the benefit of a warrant. However, even if we were to assume, for the purposes of this appeal, that Joseph's constitutional rights were violated, his claim under Section 1983 would nonetheless fail.
 {¶ 56} A local government entity is considered a "person" for the purposes of determining liability for the purposes of 42 U.S.C. § 1983.Monell v. New York City Dept. of Social Svcs. (1978), 436 U.S. 658,690-691. However, "a municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue. Respondeat superior or vicarious liability will not attach under § 1983." Canton v. Harris (1989), 489 U.S. 378, 385, citingMonell, 436 U.S. at 694-695. "Congress did not intend municipalities to be liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." Monell, 436 U.S. at 691. "The `official policy' requirement was intended to distinguish acts of themunicipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." Pembaur v. Cincinnati (1986),475 U.S. 469, 479 (emphasis sic). The burden is on the person alleging theconstitutional violation to demonstrate "a direct causal link between a municipal policy * * * and the alleged constitutional deprivation."Harris, 489 U.S. at 385.
 {¶ 57} The City moved for summary judgment on the grounds that there was a lack of evidence in the record demonstrating proof of a policy or custom, and without such proof, Joseph's Section 1983 claim could only be based on a respondeat superior theory. This is an appropriate basis on which to ground a motion for summary judgment. See Deruso v.Detroit, (C.A.6 2005), No. 03-2031, 121 Fed. Appx. 64, 65-66.
 {¶ 58} Joseph had the burden to "identify the policy, connect the policy to the [defendant] and show that the particular injury was incurred because of execution of that policy." Graham v. Washtenaw
(C.A.6 2004), 358 F.3d 377, 383 (citation omitted) (emphasis added); Civ. R. 56(E) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mereallegations * * * of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial").
 {¶ 59} A thorough review of the record indicates that Joseph has failed to meet his burden. Thus, the trial court did not err in granting the City summary judgment on Joseph's claims under 14 U.S.C. § 1983.
 {¶ 60} For the foregoing reasons, Joseph's sole assignment of error is without merit. Accordingly, the judgment of the Trumbull County Court of Common Pleas is affirmed.
WILLIAM M. O'NEILL, J., COLLEEN MARY OTOOLE, J., concur in judgment only.
[1] Civ. R. 25 provides: "If a party dies and the claim is not thereby extinguished, the court shall, upon motion, order substitution of the proper parties. The motion for substitution may be made * * * by the successors or representatives of the deceased party and, together with the notice of hearing, shall be served on the parties as provided in Rule 5 * * *. Unless the motion for substitution is made not later than ninety days after the death is suggested on the record * * * the actionshall be dismissed as to the deceased party." (Emphasis added). Here, Joseph did not file his motion for substitution until August 5, 2005, a period of 133 days. Dismissal for a failure to comply with the terms of Civ. R. 25(A) is without prejudice for lack of personal jurisdiction.Lisi v. Shafer (Jan. 13, 1994), 8th Dist. No. 64374,1994 Ohio App. LEXIS 72, at *27. A party may, pursuant to Civ. R. 6(B), extend the time for substitution based upon a showing of excusable neglect. Young v.Merrill Lynch, Pierce, Fenner Smith, Inc. (1993), 88 Ohio App.3d 12,15-16. However, "the ultimate burden of complying with the temporal requirement of Civ. R. 25(A) rests with the party who brings the action."Barrett v. Franklin (1986), 32 Ohio App.3d 51, 54, overruled on other grounds by Perry v. Eagle-Picher Industries, Inc. (1990),52 Ohio St.3d 168. Joseph has made no such showing here. In its motion for summary judgment, the City raised this issue. Accordingly, the trial court properly dismissed Clara's claims via the motion for summary judgment, and we need not address them here.