{¶ 32} I concur with the judgment and opinion of the court, but I write separately to further articulate dismay at the increase in the use of warrantless "consent" searches in drug cases. As I have noted in a previous opinion, we laude the courageous and valiant efforts of our police officers in combating the manufacture and trafficking of illegal drugs, especially methamphetamines, and we are aware that certain techniques used during drug investigations have been upheld by the courts when an articulable and reasonable suspicion of criminal activity is present. However, we have witnessed a retreat from the Weeks andMapp[1] line of cases addressing Fourth Amendment protections against unreasonable searches and seizures; thus, it is imperative, now more than ever, when the Bill of Rights is viewed by some as a "technicality" that can be ignored for expediency's sake, that this type of police investigation operate within the bounds outlined by our constitution. *Page 9 
 {¶ 33} As Ohio born Justice William Day wrote, "The efforts of the courts and their officials to bring the guilty to punishment, praiseworthy as they are, are not to be aided by the sacrifice of those great principles established by years of endeavor and suffering which have resulted in their embodiment in the fundamental law of the land."Weeks at 393.
 {¶ 34} This search was constitutionally infirmed from the start. Law enforcement obviously had only a mere suspicion of drug activity. The record is void of facts which would support a probable cause finding, so one must conclude that from the start the police chose to ignore the warrant requirement and avoid the process of judicial review of the probable cause foundation mandated for the issuance of a search warrant on the hope and prayer that Mr. Frye would consent to a search of his home.
 {¶ 35} Without consent, an officer needs probable cause that a crime has occurred before a search can be conducted. Consent, and more importantly, the voluntariness of the consent, is the core issue in this case.
 {¶ 36} In State v. Lyons (2000), 11th Dist. No. 99-L-067, 2000 Ohio App. LEXIS 2532, where we reviewed the "voluntariness" of consent, we stated: "the general rule is that a warrant supported by probable cause is needed in order for a search to occur. However, a warrantless search may be conducted if an exception to the warrant requirement exists." Id. at 8, citing Schneckloth v. Bustamonte (1973), 412 U.S. 218, 219. "For example a warrantless search does not violate the Fourth orFourteenth Amendments if it is performed with the voluntary consent of the person whose privacy rights are at issue. Id. Additionally voluntariness is a question of fact to be determined by considering the totality of the circumstances." Id. at 9, citing Schneckloth, at 248-249. *Page 10 
"Furthermore, consent must be shown to have been freely and voluntarily given by `clear and positive' evidence, and the burden is on the state to demonstrate such consent." Id. citing State v. Posey (1988),40 Ohio St. 3d 420, 427, citing Bumper v. North Carolina (1968), 391 U.S. 543,548. "That burden is `not satisfied by showing a mere submission to a claim of lawful authority.'" Id. citing Royer at 497.
 {¶ 37} In this case, as in Lyons, the state has failed to carry its burden of proving clearly and convincingly that Mr. Frye freely and voluntarily consented to the search of his home. Id. at 11. The officers in this case testified that upon their knock, Mr. Frye exited his home as Deputy Mino and Deputy Allen confronted him and informed him of the reason for their visit. At their "request," he took a seat at a table where Officer Palinkas was seated, and presumably waiting to question him, while Deputy Allen and Deputy Mino proceeded to search Mr. Frye's motor home. Thus, whether we find the officers' testimony in this case as more credible, as the trial court did below, or whether we believe in Mr. Frye's drastically different version of events, the fact of the matter is that no reasonable person would feel free to leave under these circumstances, where three uniformed officers appear at the front door with questions and demands to search your home, with seeming permission from the owner of the real property.
 {¶ 38} As to the lack of Miranda warnings in this case, it is clear that a defendant need not be under "arrest" to be "in custody".State v. Delmonico, 11th Dist. No. 2003-A-0022, 2005-Ohio-2902, ¶ 23,Orozco v. Texas (1969), 394 U.S. 324, 327. The "only relevant inquiry" in determining whether a person is in custody is "how a reasonable man in the suspect's position would have understood his situation."Berkemer v. McCarty (1984), 468 U.S. 420, 442. Deputy Mino testified that Mr. Frye exited the RV *Page 11 
when he responded to the officers' knock. Deputy Mino then testified that he "advised Mr. Frye as to the reason we were at the property. That we had received information that there was drug activity taking place there involving methamphetamine, lot of traffic coming and going from his residence * * *." Mr. Frye was then questioned as to whether anyone was inside the RV, and it was then that the officers requested to search the motor home. If three officers appear at the door, surround a person, and "request" for him to take a "seat," surely we cannot say a reasonable person would feel free to deny consent when asked to search the premises further. This scenario presents a classic example of "submission to claim of lawful authority."
 {¶ 39} Finally, although the physical evidence seized as a result of unwarned statements of the defendant may be admissible under theFifth Amendment to the United States Constitution pursuant to the holding inU.S. v. Patane (2004), 542 U.S. 630, such evidence may be inadmissible pursuant to Section 10, Article I of the Ohio Constitution.
 {¶ 40} As the Supreme Court of Ohio held in State v. Farris (2006),109 Ohio St.3d 519, 2006-Ohio-3255, "[t]he Ohio Constitution `is a document of independent force. In the areas of individual rights and civil liberties, the United States Constitution, where applicable to the states, provides a floor below which state court decisions may not fall. As long as state courts provide at least as much protection as the United States Supreme Court has provided in its interpretation of the federal Bill of Rights, state courts are unrestricted in according greater civil liberties and protections to individuals and groups.'"Farris at ¶ 46, citing Arnold v. Cleveland (1993), 67 Ohio St.3d 35, 616
N.E.2d 163, paragraph one of the syllabus. *Page 12 
 {¶ 41} The court continued and found that "Section 10, Article I of the Ohio Constitution provides greater protection to criminal defendants than the Fifth Amendment to the United States Constitution. * * * Only evidence obtained as the direct result of statements made in custody without the benefit of a Miranda warning should be excluded. We believe that to hold otherwise would encourage law-enforcement officers to withhold Miranda warnings and would thus weaken Section 10, Article I of the Ohio Constitution. * * * We believe that the overall administration of justice in Ohio requires a law-enforcement environment in which evidence is gathered in conjunction with Miranda, not in defiance of it." Id. at ¶ 48, 49
 {¶ 42} We must remain vigilant in safeguarding constitutional rights, and we should be ever mindful of Justice Clark's admonition inMapp, "The criminal goes free, if he must, but it is the law that sets him free. Nothing can destroy a government more quickly than its failure to observe its own laws, or worse, its disregard of the charter of its own existence." Mapp at 659.
[1] Weeks v. U.S. (1914), 232 U.S. 383 and Mapp v. Ohio (1961),367 U.S. 643.